**Jane DOE, Appellant,**

v.

**SMITHKLINE BEECHAM CORPORATION, SmithKline Beecham Clinical Laboratories, Inc., and The Quaker Oats Company, Appellees.**

**No. 3–92–056–CV.**

Court of Appeals of Texas, Austin.

June 2, 1993.

Rehearing Overruled July 7, 1993.

Philip Durst, Wiseman, Durst & Tuddenham, Austin, for appellant.

Elizabeth M. Fraley, Scott, Douglass & Luton, L.L.P., Dallas, for SmithKline Beecham Corp. and SmithKline Beecham Clinical Laboratories, Inc.

Amanda Foote, Clark, Thomas, Winters & Newton, Austin, for The Quaker Oats Co., appellees.

Before CARROLL, C.J., and JONES and KIDD, JJ.

CARROLL, Chief Justice.

This case involves liability of an employer and a testing lab in connection with a pre-employment drug-screening test. Appellant, Jane Doe, the prospective employee, appeals from an adverse summary judgment. We will affirm the summary judgment in part and reverse and remand in part.

## BACKGROUND

The Quaker Oats Company ("Quaker") offered Doe, a Master of Business Administration student, a job as a marketing assistant in its Chicago office at a starting salary of $49,000 plus a bonus of $4,000. The offer did not state a definite term of employment. Quaker's employment offer was conditioned on Doe (1) satisfactorily completing a drug-screening examination as required by Quaker policy and (2) providing documentation meeting the requirements of the Immigration Reform & Control Act of 1986.[1] Doe had previously signed a "Pre–Employment Consent to Drug Screening" form required by Quaker. Quaker furnished Doe with a drug "testing package" that directed her to the Austin Occupational Health Center ("AOHC")[2] where she completed the enclosed forms, including a questionnaire on recent medication use, and provided a urine sample. The only medication Doe listed on the pretesting questionnaire was her prescribed birth-control pills.[3] AOHC forwarded Doe's sample to SmithKline Beecham Clinical Laboratories, Inc. ("SmithKline")[4], the drug testing laboratory with which Quaker

had contracted for its pre-employment screening.

Doe's sample tested positive for the presence of opiates.[5] SmithKline so informed Quaker, which, through its representatives, notified Doe by telephone that her employment offer had been rescinded because "she had tested positive for narcotics." Doe denied any illegal drug use and requested an opportunity to submit a second test sample. She was informed that, according to Quaker policy, the offer had been automatically rescinded and that her only recourse was to reapply for the position in six months.

During one of several telephone conversations between Doe and Quaker representatives, as a possible explanation for the positive test result, Doe stated that she had taken one of her roommate's prescription painkillers. She later retracted this statement and accounted for the fabrication regarding the painkillers as made "under extreme duress" and when she was "completely, essentially out of [her] mind." When Doe reapplied with Quaker, she was not hired for the stated reason of her misrepresentation of taking someone else's prescription medication.

Doe asserts that her positive test for opiates was the result of her consumption of several poppy seed muffins in the days before she provided her urine sample. It is undisputed that for several years before Doe's test, scientific literature on drug testing reported that ordinary poppy seed consumption could produce positive test results for opiates. Neither the pretesting forms nor any representative of Quaker, AOHC, or SmithKline inquired about Doe's consumption of poppy seed products or

1. It is undisputed that Doe could satisfy the second of these conditions.

2. Doe initially named AOHC as a defendant in this cause, but AOHC was dismissed after the discovery that AOHC acted only as a repository for her sample. Doe does not appeal the dismissal of AOHC.

3. The pretesting questionnaire inquired about general types of prescription and nonprescription medications; it did not inquire about food intake or poppy seed consumption.

4. SmithKline's parent corporation SmithKline Beecham Corporation is also a party to this appeal. As these entities have essentially litigated this case as one party, we refer to them collectively as "SmithKline."

5. Doe does not dispute that the test was conducted by proper technical procedures and by a valid two-step testing methodology—Enzyme Multiplied Immunoassay Test ("EMIT") screening with a confirmatory gas chromatography, mass spectrometry ("GC/MS") test.

warned her to abstain from them before the test.

Doe initially brought suit against SmithKline and AOHC for negligence in the manner in which the drug test was conducted. After Quaker declined her reapplication, Doe added Quaker as a defendant. Doe alleged negligence on the part of SmithKline and Quaker in their: (1) failure to warn of the poppy seed danger, to inform her to refrain from poppy seed consumption before the test, or to inquire about consumption of poppy seeds on the pretesting questionnaire; (2) failure to review properly her test results or conduct additional tests to determine whether they indicated poppy seed consumption rather than illegal drug use; and (3) failure to retain and return her urine sample properly. Doe also urged that Quaker breached the employment contract by failing to provide her a reasonable opportunity to pass the drug test and that SmithKline tortiously interfered with that contract. Finally, Doe alleged slander and libel, claiming SmithKline and Quaker had compelled her to disclose her failure of the drug test to other prospective employers.

Quaker brought a counterclaim seeking attorney's fees for Doe's alleged breach of the waiver and release provisions of the "Pre–Employment Consent to Drug Screening." Each defendant moved for summary judgment. The trial court granted summary judgment and ordered that Doe take nothing by her claims against Quaker and SmithKline. The trial court also granted summary judgment for Doe on Quaker's counterclaim. Doe appeals by seven points of error from the take-nothing judgment. Quaker does not appeal the summary judgment on its counterclaim.

## DISCUSSION AND HOLDING

The standards for reviewing a summary judgment are well established:

(1) The movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

(3) Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

We will construe all summary-judgment evidence and inferences as favorable to Doe. Doe did not use any illegal drugs; the only possible explanation for her positive test is her consumption of poppy seed bakery goods. Had Doe known about the danger of poppy seeds causing a positive test, she would have avoided them or noted her consumption on the pretesting questionnaire, thereby passing the test, and becoming a Quaker employee. Quaker and SmithKline knew or had reason to know of the dangers of poppy seed consumption relative to drug testing. Neither Quaker nor SmithKline warned Doe of the danger or took any precautions to prevent a poppy seed mistake. Quaker's decision not to hire her on reapplication was based in part on her prior positive drug test. Doe did not take any of her roommate's prescription drugs, and made the misrepresentation about taking her roommate's painkillers in a moment of duress and emotional turmoil.

The question on appeal is not whether the summary-judgment proof raises a fact issue, but whether the summary-judgment proof establishes as a matter of law that no genuine issues of material fact exist as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970). When the order does not give a specific reason for granting the judgment, the nonmovant, on appeal, must show why each ground asserted in the motion is insufficient to support the order. *Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 79 (Tex.1989); *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755, 757 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Doe brought several claims under different legal theories against each defendant.

Doe urged four causes of action against Quaker—negligence, breach of contract, breach of a claimed duty of good faith and fair dealing, and defamation. She also brought four causes of action against SmithKline—negligence, tortious interference with contract, breach of a claimed duty of good faith and fair dealing, and defamation. To merit a summary judgment on each of her claims, Quaker and SmithKline had the burden of conclusively negating at least one essential element of each claim or establishing an affirmative defense as a matter of law. *Citizens First Nat'l Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972).

### Release

■ Both Quaker and SmithKline argued on summary judgment that they were protected from liability by the release, waiver, and indemnity provisions of the "Pre–Employment Consent to Drug Screening" form Doe signed. Doe attacks this ground for summary judgment in her seventh point of error. Doe argues that the waiver is void as a matter of public policy, is invalid on its terms and under the circumstances, and is ineffective by its terms as a release of claims against SmithKline.

The waiver contained the following exculpatory language: "I consent to the release of the drug screen results to authorized Quaker representatives for appropriate review. I release and agree to hold harmless Quaker, its employees and its agents, from any liability to me based on the results of the drug screening." The dates appearing on the waiver indicate that Doe signed it during the recruiting and interview process and before Quaker made its offer to Doe.

As discussed more fully below, we conclude that Quaker is not liable as a matter of law on each of Doe's alleged causes of action. Accordingly, as to Quaker, we do not reach the question of whether the release is enforceable.

■ As to SmithKline, we have concluded below that SmithKline may be liable only under Doe's negligence and tortious interference with contract causes of action. We conclude that the waiver is unenforceable to shield SmithKline for several reasons. First, the release may well be void as a matter of public policy. Parties may contract to release future liability unless the agreement is unconstitutional, violates statutory law, or is against public policy. *Allright, Inc. v. Elledge,* 515 S.W.2d 266, 267 (Tex.1974). To determine "whether a contractual agreement is against public policy we look to the relationship between the parties." *Id.* If a disparity of bargaining power exists in this relationship, the agreement will not be enforced. *Id.* A disparity in bargaining power exists when the releasing party "has no real choice" or is "practically compelled" to accept the agreement. *Id.; Crowell v. Housing Auth.,* 495 S.W.2d 887, 889 (Tex.1973). The leading cases present relationships on opposite ends of the range of bargaining power. A disparity of bargaining power and lack of free choice exist where a poor individual contracts with a housing authority for a low-income apartment. *Crowell,* 495 S.W.2d at 889. However, in a situation where an individual contracts with a parking lot owner for parking privileges, no disparity of bargaining power or lack of choice exists. *Allright,* 515 S.W.2d at 268. The evidence in the summary-judgement proof presents a situation in which the relative power of the parties is somewhere between that of the parties in the *Crowell* and *Allright* cases. We need not decide, however, if the waiver is void as against public policy because the waiver is not an effective release of liability.

■ Texas has adopted the "express-negligence" doctrine which requires an indemnity agreement to expressly state that it applies to "negligence" to be effective as a release of such liability. *Ethyl Corp. v. Daniel Constr. Co.,* 725 S.W.2d 705, 708 (Tex.1987). Although *Ethyl* involved an indemnity agreement, the same policy considerations are present in the context of a prospective release from liability. Accordingly, we conclude that the express-negligence doctrine equally applies to such a release. *See K & S Oil Well Serv., Inc. v.*

*Cabot Corp.,* 491 S.W.2d 733, 739 (Tex.Civ. App.—Corpus Christi 1973, writ refused n.r.e.). The language of the waiver, set out above, does not expressly release liability for negligence. Accordingly, even assuming that the waiver is otherwise effective, we conclude that it does not constitute an effective release from liability for negligence.

Finally, SmithKline has not demonstrated that it is protected under the terms of the waiver. SmithKline was not expressly named in the waiver; therefore, it could only be shielded as an agent of Quaker. SmithKline's summary-judgment proof does not demonstrate the an agency relationship existed between it and Quaker a matter of law. Indeed, from the evidence in the record and the terms of the contract between Quaker and SmithKline, SmithKline appears to be an independent contractor rather than an agent. *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 508-09 (1993); see also *Summers v. Skillern & Sons, Inc.,* 381 S.W.2d 352, 356 (Tex.Civ.App.—Waco 1964, writ dism'd w.o.j.); *but cf. Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 806 (Tex.1992). Accordingly, we conclude that SmithKline has failed to demonstrate that it falls within the terms of the waiver.

For the above reasons, we sustain Doe's seventh point of error as to SmithKline; we do not reach this point as to Quaker. Because this point is not dispositive, we must examine each of the possible grounds for the summary judgment.

## Breach of Contract

■ Doe's first point of error argues that summary judgment was not proper because the summary-judgment proof supports a cause of action against Quaker for breach of contract. Quaker argued for summary judgment on the grounds that: (1) no contract ever existed between Quaker and Doe because she failed to satisfy the condition precedent of satisfactorily passing the drug test as required by company policy; (2) even if a contract existed, Quaker was not liable for any breach under the "employment-at-will" doctrine; and (3) because Doe was ultimately denied employment for good cause (her misrepresentations about taking her roommate's prescription painkillers), there was no breach of contract.

Quaker offered Doe employment for an indeterminate period. As such, the offer was for employment at will. Under the "employment at will" doctrine, absent an express contract term to the contrary, Quaker could terminate Doe's employment at any time with or without cause and without liability. *Winters v. Houston Chronicle Publishing Co.,* 795 S.W.2d 723 (Tex.1990); *East Line & R.R. v. Scott,* 72 Tex. 70, 10 S.W. 99, 102 (1888); *Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175, 177 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). The courts have recognized only one limited exception to this common-law rule—termination solely because of the employee's refusal to perform an illegal act involving criminal penalties. *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 459 (Tex.1991); *Winters,* 795 S.W.2d at 724; *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733 (Tex.1985); *Hancock v. Express One Int'l, Inc.,* 800 S.W.2d 634 (Tex.App.—Dallas 1990, writ denied); *Morgan v. Jack Brown Cleaners, Inc.,* 764 S.W.2d 825, 826 (Tex.App.—Austin 1989, writ denied). The legislature has placed additional restrictions on the doctrine in certain situations. *Winters,* 795 S.W.2d at 724. However, none of the common-law or statutory exceptions apply under the facts of this case.

Assuming that a contract existed between Quaker and Doe, Quaker was entitled, without risk of liability, to fire Doe without a reason or for an arbitrary reason. If Doe had failed a drug test, for whatever reason, after starting her job, Quaker would be within its rights and would not breach the contract by terminating Doe. We see no reason to place greater contractual duties on Quaker in a pre-employment situation. Moreover, the summary-judgment proof shows that Quaker had grounds to withdraw its offer to Doe, because, as discussed previously, she admitted having lied to Quaker representatives about taking her roommate's prescrip-

tion medication. Accordingly, under the employment-at-will doctrine, Quaker is not liable for any breach simply because it revoked its offer or decided not to hire Doe on her reapplication.

■ Doe argues that Quaker was obligated by an implied term of the offer to provide a reasonable opportunity to pass the drug test. By failing to provide safeguards to prevent a so-called "poppy seed positive," Doe argues Quaker breached that obligation. Quaker's written offer to Doe merely stated that she must satisfactorily complete the drug test "per company policy." Texas courts have refused to imply a duty of good faith and fair dealing in employment contracts. *Lumpkin v. H & C Communications, Inc.*, 755 S.W.2d 538, 540 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *see also English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). We decline to imply the good faith and fair dealing or any other implied contractual obligations to the immediate situation.

Finally, Doe argues that the employment-at-will doctrine, if applicable, only goes to the issue of damages. Doe contends that the doctrine would negate only her claim for expected salary and, at a minimum, she was entitled to recover the $4,000 bonus. Because we have determined that the employment-at-will doctrine applies to this situation, we conclude that, under the facts presented, Quaker terminated the relationship without liability before Doe had a right to the bonus. We overrule Doe's first point of error.

### Negligence

#### 1. SmithKline

■ Doe's second point of error alleges that the trial court erred in rendering summary judgment because the summary-judgment proof supports a cause of action against SmithKline for negligence. SmithKline argued on summary judgment that it was not liable under negligence because it owed no duty, did not breach any duty owed to Doe, and did not proximately cause any damage to Doe. To recover under a negligence cause of action, the plaintiff must prove the defendant owed a

legal duty, a breach of that duty, and that damages proximately resulting from the breach. *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex.1983). The existence of a duty the defendant owed to the plaintiff is a question of law for the court. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex.1990); *Otis*, 668 S.W.2d at 312.

■ The Texas Supreme Court has described the existence of a "duty" as follows: "[I]f a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby." *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109, 110 (1942). More recent cases have described duty as a function of several interrelated factors—the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct—of which the foremost and dominant consideration is the foreseeability of the risk. *Greater Houston Transp.*, 801 S.W.2d at 525; *El Chico Corp. v. Poole*, 732 S.W.2d 306, 311 (Tex.1987); *Otis*, 668 S.W.2d at 309; *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 296 (Tex.1983). If a risk is foreseeable, it gives rise to a duty of reasonable care. *El Chico*, 732 S.W.2d at 312.

■ SmithKline argues that Doe's cause of action is only for a failure to act or "nonfeasance" which is not actionable under Texas law. This argument relies on the case law holding that innocent bystanders are under no legal duty to act. *Buchanan*, 159 S.W.2d at 110.

As stated in *Otis*, "[c]hanging social conditions lead constantly to the recognition of new duties." *Otis*, 668 S.W.2d at 310. If an individual has "at least partially created the danger" in issue, he is under an affirmative duty to act. *El Chico*, 732 S.W.2d at 306. We conclude that SmithKline is not merely an innocent bystander, but rather, it partially created a dangerous situation. As information services become more prevalent in our economy and society, the infor-

mation providers should be held accountable for the information they provide. Such information should be complete and not misleading. Credit-reporting agencies have long been held to the exercise of due care in securing and distributing information concerning the financial standing of individuals, firms, and corporations. *See e.g., Bradstreet Co. v. Gill,* 72 Tex. 115, 9 S.W. 753, 757 (1888). By making representations that implied the infallibility of its tests and by failing to provide any information to its customers on the possible implications of the raw test results, SmithKline created a possibility of misinterpretation of the information it provides.

SmithKline marketed its services to employers as "the largest and most quality-conscious network of clinical laboratories in North America" and "the most accurate, dependable and cost-effective substance-abuse testing on the market." SmithKline represented to Quaker that "a positive result from [SmithKline] can be accepted with *virtual certainty* as evidence of drug use." By these statements, SmithKline invited employers such as Quaker to rely on SmithKline's superior knowledge and resources in the area of drug testing and to rely on the test results as authoritative.[6] It is foreseeable that employers would interpret a raw result showing a positive opiate test result as exclusively indicating illegal or illicit drug use and would not consider the possibility of poppy seed consumption or other anomalies. It is also foreseeable that the lack of full disclosure of all possible implications of a positive opiate test result could lead an employer to dismiss an employee or to revoke a pending offer.

Doe has claimed negligence not only from SmithKline's failure to act. Doe alleged negligence by an affirmative act of SmithKline—destroying her urine sample contrary to her instructions and before it could be tested by an independent laboratory. Based on the above analysis, we conclude that SmithKline has failed to conclu-

sively demonstrate that it owed no duty to Doe.

Proximate cause consists of cause-in-fact and foreseeability. *El Chico,* 732 S.W.2d at 313; *Exxon Corp. v. Quinn,* 726 S.W.2d 17, 21 (Tex.1987). Cause-in-fact is "but for cause," meaning the negligent act or omission must be a substantial factor in bringing about the injury, and without which no harm would have occurred. *El Chico,* 732 S.W.2d at 313; *Nixon,* 690 S.W.2d at 549. Foreseeability means that the defendant, as a person of ordinary intelligence, should have anticipated the dangers his negligent act creates for others. *El Chico,* 732 S.W.2d at 313; *Nixon,* 690 S.W.2d at 550. Foreseeability does not require that the defendant foresee the particular incident, but only that he reasonably anticipate the general character of the injury. *El Chico,* 732 S.W.2d at 313; *Nixon,* 690 S.W.2d at 550. Construing all disputed facts and inferences in favor of Doe, we conclude that "but for" SmithKline's failure to provide some safeguards or additional information, Doe failed her drug test because she consumed poppy seeds, and but for Doe's positive test result, Quaker would not have withdrawn its offer. Quaker's policy required an automatic revocation of an offer on a positive test. As discussed above, the fact that the testing SmithKline conducted could adversely affect the employees of its customers was foreseeable. We conclude that SmithKline has not conclusively demonstrated the absence of proximate cause.

SmithKline argues that it only provides raw test results and is forbidden by Illinois law from making any interpretation of those results. *See* Ill.Ann.Stat. ch. 111½, para. 627–102 (Smith–Hurd 1991). We do not find this argument persuasive. We find reasonable Doe's assertion that to most individuals and many employers, a positive drug test result exclusively indicates illegal drug use by the subject. The

---

**6.** An employer's high level of reliance on the expertise of testing labs is supported by the testimony of the Quaker officials who supervised its pre-employment drug screening program that Quaker officials contacted SmithKline for information on the viability of Doe's explanations for her positive test.

record evidence indicates that, in fact, this was Quaker's perception of drug testing. We believe that SmithKline is obligated to provide sufficient information on possible test anomalies to prevent this misleading perception. We do not believe that providing such information would run afoul of Illinois law. By requiring such information on a general basis, the law does not require that SmithKline interpret individual results; the law requires that sufficient information be provided on a general basis to prevent the potential misleading interpretation of the information it provides. For the above reasons, we sustain Doe's second point of error.

## 2. Quaker

 Doe's third point of error alleges that the trial court erred in rendering summary judgment because she has stated a cause of action against Quaker for negligence. Quaker argued on summary judgment that it owed no duty or, alternatively, met any duty it owed to Doe. In order to impose a tort duty upon parties to a contract, the court must find that a special relationship exists between the parties. *Sanus/New York Life Health Plan, Inc. v. Dube–Seybold–Sutherland Management, Inc.*, 837 S.W.2d 191, 199 (Tex.App.—Houston [1st Dist.] 1992, n.w.h.); *see also Aranda v. Insurance Co. of N. Am.*, 748 S.W.2d 210, 212 (Tex.1988). Some contracts do involve a special relationship that may give rise to duties enforceable as torts. *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 n. 1 (Tex.1991). An employment situation governed by the employment-at-will doctrine is not such a situation. *Wal–Mart Stores, Inc. v. Coward*, 829 S.W.2d 340, 344 (Tex.App.—Beaumont 1992, writ denied).

Doe cites a line of cases beginning with the Texas Supreme Court's decision in *Montgomery Ward & Co. v. Scharrenbeck*, 146 Tex. 153, 204 S.W.2d 508 (1947), for the proposition that Quaker owed her a tort duty in addition to its obligations under the contract. *See DeLanney*, 809 S.W.2d at 494–95; *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex.1986); *Scharrenbeck*, 204 S.W.2d at 508. We disagree.

Doe relies on the statement in *Scharrenbeck* that "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing· agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." 204 S.W.2d at 510 (quoting 38 Am.Jur.*Negligence* § 20 (1941)). Although *Scharrenbeck* may be read broadly to support Doe's proposition, later decisions have limited its scope. In *Jim Walter Homes* the court stated:

> The acts of a party may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines. which duty or duties are breached. When the injury is only the economic loss to the subject of the contract itself, the action sounds in contract alone.

711 S.W.2d at 618. The court further developed this distinction in *DeLanney:*

> If the defendant's conduct—such as negligently burning down a house—would give rise to liability independent of the fact that a contract exists between the parties, the plaintiff's claim may also sound in tort. Conversely, if the defendant's conduct—such as failing to publish an advertisement—would give rise to liability only because it breaches the parties' agreement, the plaintiff's claim ordinarily sounds only in contract.

809 S.W.2d at 494. These principles are applicable in an employment-contract situation. *See Wal–Mart*, 829 S.W.2d at 344. Therefore, in determining the nature of the plaintiff's claim, we look to the nature of the loss or damage and the independence of the alleged tortious conduct from the contract. *Id.* at 495–95; *see also* W. Page Keeton, Dan B. Dobbs, Robert E. Keeton & David C. Owen, *Prosser and Keeton on Torts* § 92, at 656–58 (5th ed. 1984).

In the instant cause, Doe's alleged loss is her expected earnings as a Quaker employee. Doe seeks by her negligence claim to recover only the benefits of her alleged agreement with Quaker. Accordingly, her claim sounds only in contract. Doe's other alleged damages—compensatory damages

for harm to her reputation, exemplary damages for lost earning capacity due to her reduced employment potential, and damages for emotional distress—flow from her defamation cause of action. Doe could recover emotional distress damages under her negligence claim, in this case, however, those damages are not available as a matter of law.

As a general rule, mental anguish does not constitute an element of damages that may be recovered in an action either for breach of contract or for a tort based on a right growing out of a breach of contract. *Otten v. Snowden*, 550 S.W.2d 758, 759–60 (Tex.Civ.App.—San Antonio 1977, no writ); *see also Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan*, 705 S.W.2d 707, 710 (Tex.App.—Texarkana 1985, writ ref'd n.r.e.), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 520 (1987); *City of Dallas v. Brown*, 150 S.W.2d 129, 131 (Tex.Civ.App.—Dallas 1941, writ dism'd). There is no independent right to recover for negligently inflicted emotional distress; mental-anguish damages may only be compensated in connection with the defendant's breach of some other duty imposed by law. *Boyles v. Kerr*, 895 S.W.2d 593, 594 (Tex.1993). Quaker's alleged negligence—failing to provide adequate safeguards in its preemployment drug screening—could not arise apart from the agreement alleged between it and Doe. We conclude that contract law controls Doe's claims against Quaker exclusively. Accordingly, we overrule Doe's third point of error.

### Tortious Interference with Contract

Doe, in her fourth point of error, contends that summary judgment was improper because she has established a cause of action against SmithKline for tortious interference with contractual relations.

In its motion for summary judgment, SmithKline raised no grounds specifically attacking Doe's claim of tortious interference with contract. The trial court granted a summary judgment that Doe take nothing by her claims, including her tortious-interference claim.

The elements of a cause of action for tortious interference are: (1) an existing contract; (2) willful and intentional interference with that contract; (3) which proximately caused the plaintiff harm; and (4) actual damages or loss. *Southwestern Bell Tel. Co. v. John Carlo Texas, Inc.*, 843 S.W.2d 470, 472 (Tex.1992); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991); *Juliette Fowler Homes v. Welch Assocs.*, 793 S.W.2d 660, 664 (Tex. 1990).

Texas law protects both existing and prospective contracts from interference. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 689 (Tex.1989); *Juliette Fowler Homes*, 793 S.W.2d at 665. A contract for employment-at-will may give rise to a cause of action against a third party for tortious-interference with the contract. *Sterner*, 767 S.W.2d at 688–89. Even an unenforceable contract may serve as the basis for a tortious-interference claim if the contract is not void; in other words, unenforceability of the contract is not in itself a defense to tortious interference. *Juliette Fowler Homes*, 793 S.W.2d at 664; *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex. 1969). In the immediate case, we are presented with a prospective contract for employment-at-will. We conclude that tortious interference may apply in this situation.

We have concluded above that SmithKline has failed to conclusively establish its asserted summary-judgment grounds that it was expressly released from liability, that it owed no duty to Doe, and that it did not proximately cause Doe's damages. SmithKline asserted no other grounds that may be applied to Doe's tortious-interference claim. Therefore, we sustain Doe's fourth point of error.

### Defamation

In her fifth point of error, Doe argues that summary judgment was improper because she established a cause of action for defamation. Doe asserts that Quaker and SmithKline libeled or slandered

her by placing her in a situation in which she felt obligated to disclose to other prospective employers the circumstances of the drug test and the revocation of the offer. Quaker argued below that Doe had no action for defamation because its statements were truthful and not defamatory as a matter of law and because Doe herself published the statements to third parties. SmithKline asserted below that it was not liable for defamation because its statements were absolutely privileged as truthful or, alternatively, its statements were conditionally privileged because SmithKline owed Quaker a duty under their contract to report the test results truthfully.

■ For an action to exist for libel or slander, the statement must be published to third parties. *Lyle v. Waddle*, 144 Tex. 90, 188 S.W.2d 770, 771 (1945); *Houston Belt & Terminal Ry. Co. v. Wherry*, 548 S.W.2d 743, 751 (Tex.Civ.App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.), *cert. denied*, 434 U.S. 962, 98 S.Ct. 497, 54 L.Ed.2d 447 (1977). In this case, Doe alleges that this publication occurred when she felt compelled to explain the withdrawal of Quaker's offer to other potential employers. The Texas Supreme Court has yet to adopt the view that publication may occur by "self-defamation." *Lyle*, 188 S.W.2d at 772; *but see* David P. Chapus, Annotation, *Publication of Allegedly Defamatory Matter by Plaintiff ("Self–Publication") as Sufficient to Support Defamation Action*, 62 A.L.R.4th 616 (1988). The rule remains that "[i]f the publication of which the plaintiff complains was consented to, authorized, invited or procured by the plaintiff, he cannot recover for injuries sustained by reason of the publication." *Lyle*, 188 S.W.2d at 772.

Doe cites two court of appeals cases to support her theory of "self-defamation." *See Chasewood Constr. Co. v. Rico*, 696 S.W.2d 439 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.); *First State Bank v. Ake*, 606 S.W.2d 696 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Both of these cases rely on comment m to section 577 of the *Restatement (Second) of Torts*, set out in full as follows:

One who communicates defamatory matter directly to the defamed person, who himself communicates it to a third party, has not published the matter to third party if there are no other circumstances. *If the defamed person's transmission of the communication to the third person was made, however, without an awareness of the defamatory nature of the matter and* if the circumstances indicated that communication to a third party is likely, however, a publication may properly be held to have occurred.

Restatement (Second) of Torts § 577, cmt. m (1977) (emphasis added). The *Rico* and *Ake* opinions omit the emphasized portion of comment m from the discussion. This emphasized portion is essential as it constitutes the first hurdle of a two-part test for "self-defamation": (1) the defamed person was unaware of the defamatory nature of the matter; and (2) the circumstances indicated that the communication to the third party would be likely. *Rico*, 696 S.W.2d at 449 (Reeves, J., dissenting). Unless the emphasized portion is considered, the defamed party is under no duty to mitigate its damages by refraining to self-publish known defamatory statements.

In the instant cause, the summary-judgment proof indicates that Doe immediately knew of the defamatory implications of the statement. Accordingly, Doe failed to satisfy the first part of the two-part test. Further, although Doe claims she felt compelled to disclose the statements, there is no indication that Doe was compelled by law or other authority to repeat the statements made by SmithKline or Quaker. While we are aware of non-Texas authority allowing "self-defamation" claims under only a foreseeability test, the Texas Supreme Court has yet to adopt or approve such a broad cause of action. We decline to do so and overrule Doe's fifth point of error.

### Breach of Duty of Good Faith and Fair Dealing

■ In her sixth point of error, Doe asserts that summary judgment was im-

**260**

proper because she has established a cause of action against each of the defendants for breach of a duty of good faith and fair dealing.

Both defendants urged on summary judgment that they owed no duty of good faith and fair dealing to Doe. As stated above, Texas courts have refused to imply a duty of good faith and fair dealing in employment situations. *Lumpkin*, 755 S.W.2d at 540. Doe urges this court to impose a duty of good faith and fair dealing because "a special relationship is created by the imbalance of bargaining power when compulsory, intrusive, and complex medical procedures are required." Doe claims that this "special relationship" was created by the imbalance of bargaining power between the parties, rather than the employer-employee relationship. *See English*, 660 S.W.2d at 525 (Spears, J., concurring). We do not find the relationship involved in this case analogous to the fiduciary or quasi-fiduciary relationships involved in the cases cited by Justice Spears in his concurring opinion in *English*. We overrule Doe's sixth point of error.

### CONCLUSION

We affirm the portions of the trial court's judgment granting Quaker a summary judgment on all Doe's claims and granting SmithKline a summary judgment on Doe's claims for defamation and breach of the duty of good faith and fair dealing. We reverse the portions of the trial court's judgment granting SmithKline a summary judgment on Doe's claims for negligence and tortious interference with contract. We remand for further proceedings consistent with this opinion.