Amalia "Molly" GONZALES
and Isabel Maldonado,
Appellants,

v.

LEVY STRAUSS & CO. and
Roger Banks, Appellees.

No. 04–00–00476–CV.

Court of Appeals of Texas,
San Antonio.

Jan. 16, 2002.

*Cherry v. Chustz*, 715 S.W.2d 742, 744 (Tex. App.—Dallas 1986, no writ).

Sabrina C. Arellano, Law Offices of Sabrina C. Arellano, San Antonio, for Appellant.

Mario A. Barrera, Amber E. Alonso, Bracewell & Patterson, L.L.P., San Antonio, for Appellee.

Sitting: ALMA L. LÓPEZ, Justice SARAH B. DUNCAN, Justice Sandee BRYAN MARION, Justice.

## OPINION

SANDEE BRYAN MARION, Justice.

Appellants, Amalia "Molly" Gonzales and Isabel Maldonado, assert that Levy Strauss & Co. ("Levi Strauss") and Roger Banks fired them in violation of the Texas Right to Work Act. We hold that the appellants did not state a cause of action under the Act; therefore, we affirm the trial court's judgment.

## BACKGROUND

The appellants are non-union, supervisory-level employees of Levi Strauss, who determined that another employee, Enriqueta Martinez, was violating company rules by working "off the clock."[1] Mar-

---

1. Working while clocked out violates company rules because it artificially inflates an employee's productivity figures, which are based on pieces of clothing produced per unit of time worked on the clock. Working "off the clock" gives the false appearance that an employee is producing more pieces of clothing per recorded time on the clock than is in fact the case. Because compensation is based on productivity, working "off the clock" costs both the company and other employees

tinez is the local union president. Levi Strauss later fired the appellants for using poor judgment and violating company rules and regulations when they allegedly disclosed information concerning Martinez's working "off the clock."

The appellants sued Levi Strauss and Banks, alleging that Levi Strauss interfered with their right to work because it fired them in order to appease the union president and it defamed them in connection with their termination. Levi Strauss and Banks jointly moved for summary judgment on four grounds: (1) appellants' claims were barred under the National Labor Relations Act because they were supervisors, (2) appellants cannot state a claim under the Texas Right to Work Act because their termination had nothing to do with whether they were members or non-members of a union, (3) there was no evidence of defamation, and (4) any allegedly defamatory statements were qualifiedly privileged and there was no evidence of malice. The trial court granted the motion for summary judgment without stating its grounds.

## STANDARD OF REVIEW

Levi Strauss and Banks's motion for summary judgment requested both a traditional summary judgment and a no-evidence summary judgment. We review the summary judgment under the well-established standards. *See Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995); *Casso v. Brand,* 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Brooks v. Center for Healthcare Services,* 981 S.W.2d 279, 281 (Tex.App.-San Antonio 1998, no pet.); *Moore v. K Mart Corp.,* 981 S.W.2d 266, 269 (Tex.App.-San Antonio 1998, pet. denied); *Gonzalez v. City of*

*Harlingen,* 814 S.W.2d 109, 112 (Tex.App.-Corpus Christi 1991, writ denied).

## TEXAS RIGHT TO WORK ACT

■ The Right to Work Act prevents unlawful retaliation and discrimination because of membership or nonmembership in a union and protects employees in the exercise of their right of free choice to join or not join a labor union. *Lunsford v. City of Bryan,* 156 Tex. 520, 297 S.W.2d 115, 117 (1957); *Vasquez v. Bannworths, Inc.,* 707 S.W.2d 886, 888 (Tex.1986). Section 101.052 of the Act provides that "[a] person may not be denied employment based on membership or nonmembership in a labor union." Tex. Lab.Code Ann. § 101.052 (Vernon 1996). Section 101.301 provides that a person's right "to work may not be denied or abridged because of membership or nonmembership in a labor union or other labor organization." *Id.* § 101.301(a). In considering the right to work statutes, the *Lunsford* Court stated,

[T]he first inquiry which naturally arises is: What right did the Legislature intend to protect? It seems clear that it is the right of membership in a union as well as the right of nonmembership. The intent seems obvious to protect employees in the exercise of the right of free choice of joining or not joining a union. The purpose of the statute is to afford equal opportunity to work to both classes of employees. That purpose would be thwarted if an employer could discharge without good cause an employee when he learns that the employee is in the act of consummating membership in a labor union.

297 S.W.2d at 117.

■ Appellants argue that Section 101.301(a) encompasses causes of action for injuries that arise from a situation,

(whose relative productivity appears lower as a result).

such as here, wherein a nonunion member is fired for violating a company rule or policy, but a union member is not fired for violating a different company rule or policy. We are unwilling to expand the protection granted under Section 101.301(a) to every interaction between a union member and a nonunion member. Instead, we hold that, under Section 101.301(a), the employee must prove that his or her right to work was denied or abridged because he or she was exercising a right granted under the Act. The Act grants laborers numerous rights, including the right to organize, influence another regarding employment, bargain, and join or not join a union. TEX. LAB.CODE ANN. §§ 101.001, 101.002, 101.003, 101.052. Therefore, even if appellants' status as supervisors did not prevent them from bringing a Section 101.301 claim, that section does not apply to this factual circumstance. Appellants were not fired because they were asserting a right granted under the Right to Work Act; therefore, the trial court properly granted summary judgment on their Right to Work claim.

## DEFAMATION

■ As one of the their grounds for summary judgment, Levi Strauss and Banks argued that any allegedly defamatory remarks were qualifiedly privileged. An employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate. *Id.* Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege. *Id.* In the defamation context, a statement is made with actual mal-

ice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth. *Id.* To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *Id.* A defendant can negate actual malice by presenting evidence that shows he or she did not publish the alleged defamatory statement with actual knowledge of any falsity or with reckless disregard for the truth. *Casso v. Brand,* 776 S.W.2d 551, 559 (Tex. 1989).

■ Banks's affidavit establishes that he spoke to the following people about the circumstances surrounding appellants' termination: his immediate supervisor, the Human Resources Director, the Office Manager, and the Regional Director of Human Resources. Levi Strauss provided information to the Texas Workforce Commission and the Frick Company, which handled appellants' unemployment claim on Levi Strauss's behalf. Because statements concerning appellants' termination were made only to those involved in the process of investigating the incident and appellants' unemployment claims, the statements were qualifiedly privileged.

■ The record is devoid of any evidence that Banks knew his statements were false or that he made them with reckless disregard about their truth. In his affidavit, Banks stated,

As the Process Leader II at the time, it was my duty to make the final decision regarding any employee termination at the plant. In this case, I considered and relied upon the Investigation Documentation prepared by Moreno [Process Leader I] and Rodriguez [Human Resources Director]. I believed (and still believe) the information I received from them was true and accu-

rate and I had no reason to doubt their truth or accuracy. I also considered and relied upon Gonzales and Maldonado's work record with LS & CO., my personal experience in having worked with them at the plant and their actions on August 13, 1997. These are the only factors I considered and relied upon in arriving at the decision to terminate their employment.

In the absence of controverting proof, a defendant's affidavit is sufficient to negate actual malice. *Casso,* 776 S.W.2d at 559; *Leatherman v. Rangel,* 986 S.W.2d 759, 762–63 (Tex.App.-Texarkana 1999, pet. denied); *Welch v. Doss Aviation, Inc.,* 978 S.W.2d 215, 224 (Tex.App.-Amarillo 1998, no pet.). Banks's reliance on reports and information furnished by other employees in the line of duty under these circumstances does not amount to reckless disregard of whether such statements were false. *Martin v. Southwestern Elec. Power Co.,* 860 S.W.2d 197, 200 (Tex.App.-Texarkana 1993, writ denied). This summary judgment evidence serves to negate malice unless it is controverted.

Appellants attempt to raise a fact issue on malice by arguing, first, that Levi Strauss and Banks provided differing explanations for appellants' termination. A review of the record relied upon by appellants reveals minor inconsistencies as to the reasons for their termination, but none of these inconsistencies establish that Banks knew the information he relied upon was untrue or that he acted with reckless disregard of the truth. *See Welch,* 978 S.W.2d at 224 (slight variations in versions related hardly constitute a high degree of awareness that statement is probably false). Second, appellants con-

tend the Assistant Human Resources Assistant referred to Martinez as a "big fish" (a reference to Martinez's position as union president); Levi Strauss fired them to appease Martinez and obtain favorable concessions from the union; and Martinez was merely given an oral reprimand, while they were fired. These contentions do not allege concrete facts that would raise a genuine issue of material fact as to whether Banks acted with actual malice.

We hold that the summary judgment evidence conclusively showed that Banks acted without malice and in good faith, and, thus, Levi Strauss and Banks conclusively established their affirmative defense of qualified privilege.

■ Appellants also rely on the doctrine of compelled self-publication.[2] Appellants contend that their sudden termination after approximately twenty years virtually guaranteed questions by prospective employers as to why they no longer worked for Levi Strauss. Self-publication occurs (1) if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature, and (2) if the circumstances indicated that communication to a third party was likely. *AccuBanc Mortgage Corp. v. Drummonds,* 938 S.W.2d 135, 148 (Tex.App.-Fort Worth 1996, writ denied); *Doe v. SmithKline Beecham Corp.,* 855 S.W.2d 248, 259 (Tex. App.-Austin 1993), *aff'd as modified on other grounds,* 903 S.W.2d 347 (Tex.1995).

■ Appellants' position has been, from the very beginning, that their behavior was proper and any accusations of dishonesty or unethical behavior on their part was false. By this very argument appel-

2. This doctrine was not pled in appellants' petition and was raised for the first time in their summary judgment response. Although Levi Strauss and Banks's reply to the re-

sponse brought this to the attention of the trial court, they did not urge it as a separate ground for summary judgment.

lants negate the first element of self-publication because they cannot show they were unaware of the defamatory nature of the company's reasons for firing them; therefore, the appellants cannot establish a cause of action for defamation. Further, speculation about what appellants may reveal to prospective employers and the action taken by those employers based on the information does not support a defamation claim. *Reeves v. Western Co. of N. America,* 867 S.W.2d 385, 395 (Tex.App.-San Antonio 1993, writ denied). Consequently, the trial court properly granted summary judgment on appellants' defamation claim.

## CONCLUSION

We affirm the trial court's judgment.