Diana AUSTIN, Appellant,

v.

INET TECHNOLOGIES, INC., Appellee.

No. 05–01–01915–CV.

Court of Appeals of Texas, Dallas.

Oct. 23, 2003.

John H. Crouch, Kilgore & Kilgore, Inc., Dallas, for Appellant.

Robert E. Sheeder, Jenkins & Gilchrist, P.C., Dallas, for Appellee.

Before Justices MORRIS, MOSELEY, and FRANCIS.

## OPINION

Opinion by Justice MOSELEY.

Diana Austin sued Inet Technologies, Inc., (Inet), her former employer, for defamation arising from an incident that resulted in Austin's firing.[1] In a single issue, Austin contends the trial court erred in granting summary judgment in Inet's favor. For the reasons that follow, we resolve Austin's issue against her and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Austin was employed by Inet from July 1998 to June 2000 as a technical trainer. Johnny Michael was Austin's direct supervisor. On June 9, 2000, Austin was conducting a training session at Inet. During the session, Austin asked Michael to come into the classroom to help her solve a technical problem. Michael helped her, and, apparently believing the problem was solved, began to leave the room. However, the problem was not solved. Austin asked Michael several times to stay and help her. Eventually, Michael and Austin fixed the problem. Austin followed Michael out of the room into a hall and told Michael that she did not lightly ask him for help during a class, but when she did ask for help, she really needed it. She also told Michael that he did not support her. During this conversation she was "very passionate" and raised her voice "some." Austin then told Michael of other instances in which she thought he failed to support her, and Michael told her to move the discussion to his office or return to class. They were walking in the hall in front of a training classroom and ended the discussion in the employee break area. After the discus-

sion, Austin returned to the classroom and finished the training session.

According to Austin, after this incident, Michael falsely told Susan Stockton, a manager in the Human Resources Department (HR), and Shelle Hobbs, an HR employee, that Austin screamed at him in front of the classroom and had generally been insubordinate in front of customers. Michael, Hobbs, and Stockton repeated Michael's statement to Amer Soufan, an Inet vice-president, and then Stockton repeated the statement to James Alexander, Michael's and Austin's manager. Alexander fired Austin. In addition, Alexander told Jeff Gallamore, Austin's co-worker and friend, that Austin and Michael had "gotten into it" in front of customers and that Austin had started the incident. According to Austin, Stockton falsely wrote in Austin's file that she was terminated because of unacceptable behavior to co-workers and in front of customers and she was not eligible for rehire.

Austin posted her resume on the internet, where it was seen by Larry Rawlings, an employment recruiter. Rawlings sent Austin's resume to Agilent Technologies, which was looking for a trainer. Agilent extended an offer to Austin, contingent on the results of a background check by Choice Point. Choice Point's report stated that Melinda Cummings from Inet provided information that Austin was terminated from Inet and was unfavorable for rehire at Inet; the report also stated that Cummings could not release why Austin was terminated or unfavorable for rehire. Agilent withdrew its offer. Subsequently, Rawlings called HR to check on Austin's references. According to Austin, an Inet employee, either Kim Ladd, Shelle Hobbs, or Tricia Boyd, falsely told Rawlings that

---

1. Austin also sued Inet employees Kim Ladd, Johnny Michael, Shelle Hobbs, and Tricia Boyd individually. Those defendants were dismissed with prejudice, and they are not parties to this appeal.

Austin had a conflict with one of her employees or her manager in front of some co-workers, she had a verbal warning, and she was not eligible for rehire. Austin was required to repeat those reasons for her termination to other companies in connection with her job search.

In her petition, Austin alleged that employees of Inet defamed her by falsely accusing her of screaming at Michael in front of a training class that included Inet customers and employees and that she was forced to publish this accusation to potential employers who inquired about the reasons for her separation from Inet. Inet moved for summary judgment on both traditional and no-evidence grounds. Inet filed evidence to support its grounds for traditional summary judgment. Austin filed a response supported by evidence.[2] Inet filed a reply to Austin's response. The trial court granted summary judgment in Inet's favor.[3] This appeal followed.

## STANDARD OF REVIEW

The standards for reviewing a summary judgment granted pursuant to rule of civil procedure 166a(c) are well established. TEX.R. CIV. P. 166a(c); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985). A defendant moving for summary judgment must either: (1) conclusively disprove at least one element of the plaintiff's theory of recovery; or (2) plead and conclusively establish each essential element

of an affirmative defense. See City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678–79 (Tex.1979); Zep Mfg. Co. v. Harthcock, 824 S.W.2d 654, 657 (Tex.App.-Dallas 1992, no writ). Once the movant establishes its right to summary judgment, the burden shifts to the nonmovant to present the trial court with evidence of any issues that would preclude summary judgment. City of Houston, 589 S.W.2d at 678.

Under rule 166a(i), a party may move for a no-evidence summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R. CIV. P. 166a(i); Gen. Mills Rests., Inc. v. Tex. Wings, Inc., 12 S.W.3d 827, 832 (Tex. App.-Dallas 2000, no pet.). We review a no-evidence summary judgment de novo by construing the record in the light most favorable to the nonmovant and disregarding all contrary evidence and inferences. Gen. Mills Rests., Inc., 12 S.W.3d at 832–33 (citing Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.1997)). A no-evidence summary judgment is improperly granted when the respondent brings forth more than a scintilla of probative evidence that raises a genuine issue of material fact. TEX.R. CIV. P. 166a(i); Gen. Mills Rests., Inc., 12 S.W.3d at 832.

When a trial court's order granting summary judgment does not specify the

---

**2.** We conclude that all of Austin's summary judgment evidence is part of the record because Inet did not obtain a written ruling on its objections. See Utils. Pipeline Co. v. Am. Petrofina Mktg., 760 S.W.2d 719, 722–23 (Tex. App.-Dallas 1988, no writ). Moreover, because Austin's affidavit states facts, we reject Inet's argument on appeal that Austin's affidavit is conclusory and therefore incompetent summary judgment evidence. See Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex.App.-Houston [1st Dist.] 1997, no pet.) (holding

objection that statement is conclusory, i.e., that it does not provide underlying facts to support conclusion, may be raised for first time on appeal).

**3.** Austin also asserted a claim for intentional infliction of emotional distress. The trial court granted summary judgment in Inet's favor on this claim. Austin does not challenge summary judgment on that claim on appeal.

ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any theory advanced is meritorious. *Carr v. Brasher,* 776 S.W.2d 567, 569 (Tex.1989).

## APPLICABLE LAW

Defamation takes two forms: slander and libel. *AccuBanc Mortgage Corp. v. Drummonds,* 938 S.W.2d 135, 147 (Tex.App.-Fort Worth 1996, writ denied). Slander is a false oral statement that is published to a third person without a legal excuse, which refers to an ascertainable person. *Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995). Libel is defamation expressed in written form. TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); *Rogers v. Dallas Morning News,* 889 S.W.2d 467, 472 (Tex. App.-Dallas 1994, writ denied). A statement is defamatory if the words tend to injure a person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury. TEX. CIV. PRAC. & REM. CODE ANN. § 73.001; *Einhorn v. La-Chance,* 823 S.W.2d 405, 410–11 (Tex.App.-Houston [1st Dist.] 1992, writ dism'd w.o.j.). Defamatory statements are "published" if they are communicated orally, in writing, or in print to some third person capable of understanding their defamatory import and in such a way that the third person did so understand. *Ramos v. Henry C. Beck Co.,* 711 S.W.2d 331, 335 (Tex. App.-Dallas 1986, no writ).

An employer has a conditional or qualified privilege that attaches to communications made in the course of an investigation following a report of employee wrongdoing. *Randall's Food Mkts.,* 891 S.W.2d at 646. The privilege remains intact as long as communications pass only to persons having an interest or duty in the matter to which the communications relate. *Id.* Proof that a statement was motivated by actual malice existing at the time of publication defeats the privilege. *Id.* In the defamation context, a statement is made with actual malice when the statement is made with knowledge of its falsity or with reckless disregard as to its truth. *Id.* To invoke the privilege on summary judgment, an employer must conclusively establish that the allegedly defamatory statement was made with an absence of malice. *Id.*

In addition, truth, even substantial truth, is a complete defense to defamation. *Randall's Food Mkts.,* 891 S.W.2d at 646; *McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990). The test used in deciding whether a statement is substantially true involves considering whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average listener, than a truthful statement would have been. *McIlvain,* 794 S.W.2d at 16. This evaluation involves looking to the "gist" of the statement. *Id.* If the underlying facts as to the gist of the defamatory charge are undisputed, we may disregard any variance with respect to items of secondary importance and determine substantial truth as a matter of law. *Id.*

## DISCUSSION

On appeal, Austin divides the statements she alleged were defamatory into three categories. First, Austin alleged she was defamed by Michael's statement to Stockton and Hobbs accusing Austin of screaming at him in front of a training class that included Inet customers and employees. Austin also claims she was defamed by the repetitions of Michael's statement to Soufan, Alexander, and Gallamore.

Inet moved for summary judgment on the ground that Michael's statements to Stockton and Hobbs and the repetition of

those statements to Inet employees were protected by a qualified privilege. Inet's summary judgment evidence included Michael's affidavit, in which he stated he told Stockton and Hobbs that Austin yelled at him "in the classroom area at Inet and refused to stop yelling" at him and return to her classroom after he told her to do so. Michael also stated that his statement to Stockton and Hobbs was true and he did not have any actual knowledge or reason to believe it to be false. According to Stockton, Michael told her that Austin "had been extremely insubordinate and had yelled at him in front of the class area." According to Stockton, Michael did not say that the alleged yelling took place actually in the classroom, but that "it was in front of the classroom area." According to Stockton, there were several classrooms in the hall, and the incident would have taken place where Inet employees and customers in several or all of the classrooms could have overheard. Stockton and Michael then discussed the incident with Soufan and Alexander. Affidavits from Stockton, Soufan, and Alexander stated that they believed Michael's statements regarding the June 9 incident to be true and had no reason to disbelieve the truth of the statements.

Michael's statements to Stockton, Soufan, and Alexander were made to Michael's and Austin's supervisors and the HR department in the course of investigating an incident of employee insubordination. We conclude that because these statements were made to persons who had an interest or duty in the matter to which the communications related, they were protected by a qualified privilege. *See Randall's Food Mkts., Inc.*, 891 S.W.2d at 646–47 (concluding qualified privilege extends to statements made to supervisors and fellow employees involving employee's misconduct incident); *Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437, 449–50 (Tex.App.-Houston [1st

Dist.] 1993, no writ) (concluding qualified privilege extends to employee's performance appraisal reviewed by supervisors), *disapproved of on other grounds by Huckabee v. Time Warner Entm't Co. L.P.*, 19 S.W.3d 413, 423 (Tex.2000). In addition, Inet carried its burden to prove, as the summary judgment movant, lack of actual malice. *See Randall's Food Mkts., Inc.*, 891 S.W.2d at 646.

Nevertheless, Austin contends that her evidence raises a fact issue on malice. She argues that the privilege was lost because Michael's comments were false and Inet employees were aware of their probable falsity, thus demonstrating malice. In response to Inet's motion for summary judgment, Austin filed her affidavit in which she stated that her conversation was outside the classroom, she raised her voice "some" but did not yell or scream at Michael, and her voice was not loud enough to be overheard in the classroom. She also argued that her evidence showed that two Inet employees who were in her training class when this incident occurred, did not hear any screaming and customers' course evaluations did not refer to any screaming.

■■■■ However, the issue as to actual malice is the speakers' subjective state of mind. *See Free v. Am. Home Assurance Co.*, 902 S.W.2d 51, 55–56 (Tex.App.-Houston [1st Dist.] 1995, no writ). Moreover, malice cannot be inferred from falsity of the statement alone. *Martin v. Southwestern Elec. Power Co.*, 860 S.W.2d 197, 200 (Tex.App.-Texarkana 1993, writ denied). Thus, even if Austin's summary judgment evidence raised a fact issue as to the truthfulness of the statements, such evidence does not raise a fact issue as to malice on the part of the Inet employees. *See id.* Failure to investigate the truth or falsity of a statement before it is published

is insufficient to show actual malice. *El Paso Times, Inc. v. Trexler*, 447 S.W.2d 403, 406 (Tex.1969); *Leatherman v. Rangel*, 986 S.W.2d 759, 763 (Tex.App.-Texarkana 1999, pet denied). We conclude that Austin presented no controverting evidence that Michael, Stockton, Hobbs, or Alexander believed the statements regarding Austin were false or published with reckless disregard for the truth. *See Carr*, 776 S.W.2d at 571.

◼ Austin also argues that Alexander's statement to Gallamore was not covered by the qualified privilege because Austin had already been fired and Gallamore had no particular need to know the information. However, the evidence shows that Gallamore was Austin's friend and had asked Alexander why Austin had been fired. This evidence shows that Gallamore was a person having an interest or duty in the matter related to Austin's dismissal for insubordination. *See Borden, Inc. v. Wallace*, 570 S.W.2d 445, 448 (Tex.Civ.App.-El Paso 1978, writ dism'd w.o.j.) (qualified privilege protects communication from personnel director to discharged employee's friend and fellow employee who asked for information regarding circumstances of discharge, when no evidence of malice), *disapproved of on other grounds by Ayres v. Canales*, 790 S.W.2d 554, 556 n. 2 (Tex. 1990). Inet offered evidence that Alexander believed the statement to be true, and Austin offered no evidence of Alexander's malice. Therefore, we conclude that Alexander's statement to Gallamore is protected by the qualified privilege. Accordingly, the trial court correctly granted summary judgment in favor of Inet regarding Michael's statements to Stockton and Hobbs and the repetition of those statements to Inet employees.

◼ Second, Austin alleged she was defamed by Stockton's writing in Austin's employment file that Austin had been fired for unacceptable behavior to co-workers and in front of customers and was ineligible for rehire and HR employees' repetition of false statements about her termination to Rawlings and Choice Point. Inet moved for summary judgment on grounds that the statements to Rawlings and Choice Point were true or substantially true.

Inet's summary judgment evidence showed that Michael told Stockton and Hobbs that Austin followed Michael out of the training classroom into the hall and yelled at him in the hall in front of the classroom area, in front of Inet customers and employees who were present for training, and that Austin refused to stop yelling and return to her classroom after Michael asked her to do so. In her summary judgment evidence, Austin conceded that she followed Michael out of the classroom to discuss her irritation with him; the conversation was outside the classroom, she raised her voice but denied screaming or yelling at Michael; and her voice was not loud enough to be heard in the classroom. In her deposition, Austin admitted that she was "very passionate" and raised her voice during the incident. Further, in her deposition, Austin conceded that she had been reprimanded for insubordinate behavior in a previous incident in which she yelled at Michael, and she was ineligible for rehire. Inet's evidence also included Alexander's deposition in which he stated that Austin was fired for incidents of insubordination with her supervisor, including the June 9 incident of yelling at Michael in a vicinity where customers could hear.

Thus, the summary judgment evidence shows that the underlying facts as to the "gist" of the charge are true, that is, Austin was insubordinate to Michael in an area where Inet employees and customers could hear the exchange. Whether Austin's

voice rose to the level of yelling or screaming, or whether the incident took place in front of the class Austin was teaching or in an area from which persons in other classrooms could have heard the incident, are of secondary importance. *See McIlvain,* 794 S.W.2d at 16 The defamatory statement that Austin was insubordinate in raising her voice to her supervisor in front of the employees and customers Austin was training is not more damaging to Austin's reputation than the statement that she was insubordinate in raising her voice in an area from which Inet employees and customers in other classrooms could have heard. Thus, the summary judgment evidence proved the statement in her personnel file was true or substantially true and that the statements to Rawlings and Choice Point were true or substantially true. None of Austin's summary judgment evidence disputes any part of the statements' truthfulness or substantial truthfulness. Therefore, the trial court did not err in granting summary judgment in Inet's favor on these statements.

 Third, Austin alleged that she was forced to self-publish the defamation by repeating it to potential employers. Self-publication occurs: (1) if the defamed person's communication of the defamatory statements to the third person was made without an awareness of their defamatory nature; and (2) if the circumstances indicated that communication to a third party was likely. *Gonzales v. Levy Strauss & Co.,* 70 S.W.3d 278, 283 (Tex.App.-San Antonio 2002, no pet.) (citing *AccuBanc Mortgage Corp.,* 938 S.W.2d 135 at 148, and *Doe*

*v. SmithKline Beecham Corp.,* 855 S.W.2d 248, 259 (Tex.App.-Austin 1993), *aff'd as modified on other grounds,* 903 S.W.2d 347 (Tex.1995)); RESTATEMENT (SECOND) OF TORTS § 577 cmt. m (1977). Although two courts of appeals have adopted a self-defamation claim under only a foreseeability test, the Texas Supreme Court has yet to adopt or approve such a broad cause of action. *Doe,* 855 S.W.2d at 259 (citing *Chasewood Constr. Co. v. Rico,* 696 S.W.2d 439, 445 (Tex.App.-San Antonio 1985, writ ref'd n.r.e.), and *First State Bank of Corpus Christi v. Ake,* 606 S.W.2d 696, 701–02 (Tex.Civ.App.-Corpus Christi 1980, writ ref'd n.r.e.)). Inet moved for summary judgment on this theory on grounds that Austin could not meet the first element of this theory pursuant to *AccuBanc Mortgage Corp.* and *Doe.*

Austin's contention was that Michael's statement was false, as were all statements springing from it. This argument, however, negates the first element of Austin's self-publication claim because she cannot show she was unaware of the alleged defamatory nature of Inet's reason for firing her. Therefore, Austin cannot establish a cause of action for defamation by self-publication. *See Gonzales,* 70 S.W.3d at 283–84.[4] Accordingly, the trial court did not err in granting summary judgment in Inet's favor on the theory of self-publication.

## CONCLUSION

Because we conclude the trial court properly granted summary judgment pursuant to rule 166a(c) in Inet's favor on all

---

4. Austin relies on this Court's opinion in *DeWald v. Home Depot,* No. 05–98–00013–CV, 2000 WL 1207124 (Tex.App.-Dallas Aug.25, 2000, no pet.) (not designated for publication), which, like *Rico* and *Ake,* did not require the first element to establish a theory of self publication. However, *DeWald* has no precedential value. *See* TEX.R.APP. P. 47.7

("Opinions not designated for publication by the court of appeals under these or prior rules have no precedential value. . . ."). Moreover, because *DeWald* omits the first element, we decline to follow it. *See AccuBanc Mortgage Corp.,* 938 S.W.2d at 148; *Doe,* 855 S.W.2d at 259.

of the statements Austin alleged defamed her, we need not address whether summary judgment on no-evidence grounds was proper. Accordingly, we affirm the trial court's judgment.