NUMBER 13-08-00211-CV


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


GERALD SANSING, Appellant,


v.


CARLOS GARCIA, Appellee.

 
 

On appeal from the 319th District Court of

Nueces County, Texas.

 


MEMORANDUM OPINION


Before Chief Justice Valdez and Justices Yañez and Benavides

 Memorandum Opinion by Chief Justice Valdez 

 Appellant Gerald Sansing appeals from a traditional summary judgment that was
granted in favor of appellee Carlos Garcia. In a single issue, advanced by six sub-issues,
Sansing contends that the trial court erred in granting summary judgment. We affirm.

I. Background

 The underlying suit is the result of a rancorous relationship between Sansing, a
tenured biology professor at Del Mar College, and Garcia, the college president. The
discord came to a crescendo in November and December 2006. During a November 14,
2006 public meeting of the Del Mar College Board of Regents, Garcia delivered an oral
report, in which he stated, in relevant part, that there were "a handful of individuals in that,
our community who are just, uh, very much interested in tearing this community college
down, again, you know, I, I apologize for those individuals." On November 21, during a
"public-comment" session of a board of regents meeting, Sansing publicly commented on
Garcia's statement. On November 26, Sansing memorialized his public comments in an
e-mail to Garcia, writing:

I will repeat what I said during the public comments session of the November
21, 2006, Del Mar College Board of Regents meeting in response to your
outrageous remark on November 14, 2006 that there are a handful of people
(including me) that are out to destroy Del Mar College. I stated that if I were
trying to destroy Del Mar College, there would not be a brick still standing. 
It appears that you have been doing the destroying and that several of us
"little people" have been trying with every fiber of our bodies to prevent you
from accomplishing your destruction.


On December 1, Garcia made the following relevant remarks at a faculty council meeting (1):

If you have a problem, or if you believe, if you perceive that you have a
problem with your re-accreditation process on your credentials certificate, I
would urge you to meet with Dr. Garcia. Give us an opportunity to stick with
you and figure out how it is to best help you meet whatever criteria the
Southern Association has, so that we don't have risks, we don't end up
losing accreditation, closing the doors because someone decided that that's
not, you know, what they want, because I'm retiring or whatever you're doing. 
I'm going to leave, I've got another, job, I've got another offer. Please
consider that the rest of us are going to remain. The rest of us need to be
here and the rest of us need to have also a future in which to move, and
that's the important thing. Please consider all of that . . . .


One of our faculty members said, I went over there and my credentials, my
transcripts are missing. We've got to get rid of this administration. He shows
up with his best friend, goes to the office and says I want to see my files. 
Now why would the honorable, Full Professor Dr. Sansing want to see his
files? What is he afraid of? So we share the files. You guys want to see
your file? You're welcome to see your files. Any of you can come go
through your file. Now I'm not alleging that Dr. Sansing was going to pull
stuff out of his file, you know, when nobody's watching . . . . I didn't say that,
or perhaps Dr. Reid . . . I don't know. The transcript wasn't there. The
reason why the transcript was not in the file is because we're having to
process the transcript to do exactly what we need to do, get ready for
accreditation. Some of us will be ready for accreditation.


Now what goes out on e-mail, though, is we've got to get rid of that
administration, that nefarious, evil administration, we've got to stop it. Well,
I wish somebody would tell me why. I mean, what is it that Dr. Garcia has
done? What is it that I have done or what is it that Vicky has done or
anybody else has done that is so nefarious and evil that we want to destroy
the staff of this college? 


Or, better yet, to have one of our senior faculty speak in an open forum
saying, you know, if I want to destroy this college, not one brick would be left. 
And you're sitting there thinking, my God, this guy is a [tenured] faculty
member here, and we pay this individual all this money to come and teach
and he just told the Corpus Christi community and the world on tape, if I
wanted to destroy this college not one brick would be left. And then he
supplements it by putting it in writing a second time, so when you're reading
it, it gives you a chilling effect. There was a chilling effect for me to read one
of our faculty members airing their [sic] rights if I wanted to destroy not one
brick would be left. Right? Now why was that chilling for me? Because, as
an administrator, I go to all these conferences and we talk about risks, and
they say note, if you ever had an employee or an individual that shoots up
a dorm, an individual or an employee that does something damaging to the
institution, they always leave clues behind. They always tell you, and then
you shouldn't be surprised when they do it, because, hey, you were told, so
now one of our seasoned senior faculty says in an open comment, posts it
on the record and then writes it down in an e-mail, and then everybody gets
to see. So is that the kind of environment that we need? I would suggest
not. So please consider all that.


But first and foremost, accreditation is beyond losing Federal funding. And
No. 2, if you really believe that there's a problem with any of your credentials
for re-accreditation, meet with Dr. Garcia. Have a genuine opportunity to
stick with you to figure out, as a team together, figure it out so that we are not
at risk whenever re-affirmation [sic] occurs. We are committed, I am
committed to ensure that for every single one of you that's on the faculty that
your credentials are what SACS wants them to be, that you're teaching what
SACS want you to teach. We are committed to helping you. Let's get there
together. Let's stop this nonsense of division and driving a wedge between
us at this college. We're all in the same boat.


I'm the biggest cheerleader you will ever have in this community. I have
never, ever said our faculty is second rate, our faculty is bad, our faculty is
awful. There's a handful of people who say that. I would just ask you to stop
it. It's all utter nonsense. You're a very good faculty. You have an excellent
reputation nationwide; you have an excellent reputation across the State. 
One of the reasons why I'm here is because you have such a good
reputation. And when those among you tell, oh, the reputation of this college
is going down the tubes, oh, we're terrible as an institution. When you hear
elected officials say stuff like that in public, please follow them and tell them
of all the good things that we're doing. Because the truth is, this is one of the
best institutions there is in this country, and don't let anybody, anybody ever
tell you otherwise, because if they do they're lying to you, it's not true. It's
not true.


Thank you.


 Sansing sued Garcia and Del Mar College for intentional infliction of emotional
distress, slander, and fraud. Garcia and Del Mar College answered with general denials
and asserted several affirmative defenses, including sovereign immunity. Del Mar College
filed a plea to the jurisdiction, which the trial court granted. Meanwhile, Garcia moved for
a no-evidence summary judgment on Sansing's intentional infliction of emotional distress
and fraud claims. Additionally, Garcia's motion for summary judgment asserted six
grounds for traditional summary judgment on Sansing's slander claim. As evidentiary
support for his motion for traditional summary judgment, Garcia attached, among other
things: (1) excerpts of Sansing's deposition testimony, (2) excerpts of Garcia's November
14 oral report to the board, (3) a transcript of Garcia's December 1 remarks at a faculty
council meeting, (4) an e-mail from Sansing to Garcia sent on November 26, and (5) an
affidavit by Garcia. Sansing responded to Garcia's traditional motion for summary
judgment and tendered his own affidavit testimony. 

 The trial court granted Garcia summary judgment on all causes of action without
specifying the grounds relied upon. This appeal followed.

II. Discussion

 In a single issue, advanced by six sub-issues, Sansing challenges the trial court's
summary judgment as to his slander claim. (2) In his first sub-issue, Sansing contends the
trial court erred in holding that Garcia's remarks at the faculty council meeting were not
capable of a defamatory meaning.

A. Standard of Review

 We review traditional summary judgments de novo. Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). When a summary judgment does not specify
the grounds on which it was granted, we will affirm the judgment if any one of the theories
advanced in the motion is meritorious. Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d
150, 157 (Tex. 2004).

 A traditional summary judgment is proper only when the movant establishes that
there is no genuine issue of material fact and that the movant is entitled to judgment as a
matter of law. Tex. R. Civ. P. 166a(c). In reviewing a summary judgment under rule
166a(c), we must indulge every reasonable inference in favor of the nonmovant, take all
evidence favorable to the nonmovant as true, and resolve any doubts in favor of the
nonmovant. Dorsett, 164 S.W.3d at 661. A defendant who moves for summary judgment
on the plaintiff's claim under rule 166a(c) must conclusively disprove at least one element
of the plaintiff's cause of action. Little v. Tex. Dep't of Criminal Justice, 148 S.W.3d 374,
381 (Tex. 2004).

B. Applicable Law

 Slander is a defamatory statement orally communicated or published to a third
person without legal excuse. Randall's Food Mkts., Inc. v. Johnson, 891 S.W.2d 640, 646
(Tex. 1995); Austin v. Inet Tech., Inc., 118 S.W.3d 491, 496 (Tex. App.-Dallas 2003, no
pet.). A statement is defamatory if the words tend to injure a person's reputation, exposing
the person to public hatred, contempt, ridicule, or financial injury. Austin, 118 S.W.3d at
496; Cecil v. Frost, 14 S.W.3d 414, 417 (Tex. App.-Houston [14th Dist.] 2000, no pet.). 
Whether Garcia's statement is capable of a defamatory meaning is generally a question
of law for the court. New Times, Inc. v. Isaacks, 146 S.W.3d 144, 154 (Tex. 2004). But
when a publication or statement is of doubtful import, the jury must determine its meaning. 
Id.

 Under Texas law, even if individual statements, considered in isolation, are literally
true or non-defamatory, a publication can convey a false and defamatory meaning by
omitting or juxtaposing facts. Turner v. KTRK Television, Inc., 38 S.W.3d 103, 114 (Tex.
2000). Whether a publication is false and defamatory depends on a "reasonable person's
perception" of the entire publication, not merely individual statements. Id. at 115. A
publication as a whole may be defamatory if the publication creates a false impression. 
Id. at 117-18.

C. Analysis

 As his first ground for traditional summary judgment, Garcia asserted that his
remarks at the faculty council meeting were not capable of a defamatory meaning. 
Sansing responded by noting that his comments at the November 21 board meeting and
his e-mail of November 26 were satirical in nature and that a reasonable person would
recognize their benign meaning. Sansing argued that by repeating his comments and
describing Garcia's own reaction to the comments, Garcia recounted Sansing's comments
in a defamatory manner by juxtaposing their effect on him and by failing to frame the
satirical nature of the comments within the broader dispute. Sansing relies on Isaacks for
the proposition that some satire is not actionable as defamation. 146 S.W.3d at 161
(holding that the satire at issue could not reasonably be understood to state actual facts
about the claimants).

 Sansing's reliance on Isaacks is misplaced. The focus of our inquiry in determining
whether Garcia's remarks imparted a defamatory meaning is not on whether Garcia's
remarks adulterated or mischaracterized the satirical meaning of Sansing's comments, but
instead, it is on how a reasonable person would interpret Garcia's entire remarks. See
Turner, 38 S.W.3d at 115. As to the reasonable person analysis, Sansing argues that
Garcia's remarks went beyond mere opinion and "had the effect of telling the audience that
Sansing had made a credible threat of violence against the college campus" by
"mischaracterizing Sansing's prior comments." He asks us to focus on the following lines
from Garcia's remarks:

There was a chilling effect for me to read one of our faculty members airing
their [sic] rights if I wanted to destroy not one brick would be left. Right? 
Now why was that chilling for me? Because, as an administrator, I go to all
these conferences and we talk about risks, and they say note, if you ever
had an employee or an individual that shoots up a dorm, an individual or an
employee that does something damaging to the institution, they always leave
clues behind. They always tell you, and then you shouldn't be surprised
when they do it, because, hey, you were told, so now one of our seasoned
senior faculty says in an open comment, posts it on the record and then
writes it down in an e-mail, and then everybody gets to see. 

We, however, cannot review the statement line-by-line and must review the entire
publication to determine its "gist." See Turner, 38 S.W.3d at 115.

 A review of Garcia's December 1 remarks at a faculty council meeting by a
reasonable person shows that: (1) Del Mar College was undergoing a "re-accreditation
process"; (2) Sansing had accused the administration of failing to include his transcript in
his file; (3) Sansing sent an allegedly hostile e-mail to Garcia, which included the phrase
"if I were trying to destroy Del Mar College, there would not be a brick still standing"; (4)
Sansing's comment allegedly had a "chilling effect" on Garcia; (5) as an administrator,
Garcia was concerned about the "kind of environment" that the e-mail created; (6) Garcia
claimed to be the college's biggest "cheerleader"; and (7) Garcia appealed to the faculty
to stop the division because members of the college community were "all in the same
boat." The "gist" of Garcia's remarks is that there was acrimony between the
administration and Sansing, and the acrimony was counterproductive. Therefore, the
remarks do not convey a defamatory meaning as a matter of law. (3) 

 The blending of undisputed facts and opinion in a defamation suit is an issue that
was recently handled by the Fort Worth Court of Appeals. Earlier this year, that court
affirmed a summary judgment granted in favor of college administrators in a defamation
suit that was brought by a former faculty member. See Hadlock v. Tex. Christian Univ., No.
2-07-290-CV, 2009 Tex. App. LEXIS 1330, at *18 (Tex. App.-Fort Worth Feb. 26, 2009,
pet. denied) (memo op.). In Hadlock, college administrators had initially recommended
tenure for Hadlock, but rescinded their recommendation because, in their opinion, Hadlock
violated college policy by "expressing disrespect to colleagues and by refusing to accept
opinions that differed from his own." Id. at *2. Hadlock sued for defamation and the
administrators moved for a no-evidence summary judgment on, inter alia, the ground that
the comments at issue were not defamatory. Id. at **6-7. The trial court granted summary
judgment, and the court of appeals affirmed. Id. at *18. The appeals court noted that the
administrators (1) laid out the behavior they considered to be a problem; (2) detailed the
ethics rules, which professors were required to follow; and (3) stated their belief that
Hadlock had violated the rules. Id. at *13. The court then held that, under the facts of the
case, the administrators were entitled to their opinions. Id. (citing Thomas-Smith v. Mackin,
238 S.W.3d 503, 507 (Tex. App.-Houston [14th Dist.] 2007, no pet.)). The Hadlock court
noted that the administrators "did not drop dark hints about Hadlock's unethical and
unprofessional behavior in a way that implied that they were basing their opinion on verified
facts." Id. In other words, the administrators' opinions were clearly based on their
individual beliefs regarding how the ethical rules should apply. See id.

 Clearly, Sansing was sufficiently offended by Garcia's remarks to bring the
underlying suit. Yet, we have stated that a statement "may be false, abusive, unpleasant,
or objectionable to the plaintiff and still not be defamatory in light of the surrounding
circumstances." Columbia Valley Reg'l Med. Ctr. v. Bannert, 112 S.W.3d 193, 198 (Tex.
App.-Corpus Christi 2003, no pet.). Like the administrators in Hadlock, Garcia's opinions
are clearly an expression of his own belief. A reasonable reading of Garcia's entire
remarks shows that he was conveying his belief that Sansing's comments and conduct
were inappropriate. Accordingly, Garcia's remarks are not actionable as defamation. 
Sansing's first sub-issue and his sole issue are overruled. (4)

III. Conclusion

 The judgment of the trial court is affirmed.

 ROGELIO VALDEZ

 Chief Justice

 

Memorandum Opinion delivered and filed

on this the 22nd day of October, 2009. 
1. The record does not show who attended the faculty council meeting or whether it was a public event.
2. Sansing did not respond to Garcia's no-evidence grounds for summary judgment. On appeal,
Sansing does not challenge the trial court's summary judgment as to his intentional infliction of emotional
distress and fraud claims. Therefore, we will not address them. Additionally, Sansing's response centered
only on Garcia's December 1, 2006 remarks to the faculty council. Accordingly, we will focus our review on
those remarks. See Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written
motion, answer or other response shall not be considered on appeal as grounds for reversal.").
3. Even if we were to hone in on the lines Sansing highlights, those sentences would not be actionable
as defamation because Garcia's remarks included undisputed facts--Sansing's comments--and
opinion--that based on his training, it was Garcia's opinion that Sansing's conduct posed a potential threat
of violence.
4. Because our disposition of Sansing's first sub-issue is dispositive, we need not address his
remaining sub-issues. See Tex. R. App. P. 47.1.