**Reverse, Render and Remand; Opinion Filed July 20, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-01265-CV

**AZEB RUDER, Appellant**
**V.**
**WILLIAM JORDAN D/B/A WILLIAM DAVIS REALTY, WILLIAM DAVIS REAL**
**ESTATE SERVICES, LLC D/B/A WILLIAM DAVIS REALTY, AND KATHY JABRI**
**Appellees**

**On Appeal from the County Court at Law No. 4**
**Collin County, Texas**
**Trial Court Cause No. 004-01346-2014**

## MEMORANDUM OPINION

Before Justices Bridges, Lang, and Evans
Opinion by Justice Lang

Azeb Ruder appeals from the trial court's order denying her motion to dismiss filed pursuant to Chapter 27 of the Texas Civil Practices and Remedies Code, commonly referred to as the Texas Citizens' Participation Act ("TCPA"). *See generally* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.001–.011 (West 2015). In her first two issues, Ruder contends the trial court erred in denying her motion to dismiss appellees' defamation claims. In a third issue, Ruder contends the trial court erred in denying her motion to dismiss Jabri's request for injunctive relief. We decide in favor of Ruder on her first two issues, and we need not address the third. We reverse the trial court's order denying Ruder's motion to dismiss and render judgment dismissing appellees' defamation claims. We remand the cause to the trial court for further proceedings, including a

determination of costs, attorney's fees, and other expenses as authorized under section 27.009. *See id.* § 27.009.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record, Ruder entered into a residential real estate listing agreement with William Davis Realty, giving William Davis Realty the exclusive right of sale of Ruder's house from January 10, 2014, to May 30, 2014. On or about January 10, 2014, appellee Kathy Jabri, a licensed real estate salesperson, operating under the brokerage license of appellee William Davis Real Estate Services, LLC d/b/a William Davis Realty, listed Ruder's house in the Multiple Listing Service ("MLS"). After Ruder entered into a contract to sell the house on or about February 5, 2014, Jabri changed the property's status in the MLS listings from "active" to reflect that there was a pending contract. On or about March 14, 2015, the buyer allegedly terminated the contract. According to appellee William Jordan, a licensed real estate broker and the sole shareholder of William Davis Real Estate Services, LLC d/b/a William Davis Realty, he received a telephone call from an attorney claiming to represent Ruder on March 26, 2014. Following this conversation, Jordan instructed Jabri to change the MLS listing for Ruder's house to "active." According to Jabri, she complied with this request on or about March 27, 2014, but "thereafter," without direction from Jordan or Ruder, listed Ruder's house as "temporarily off market."

On or about June 26, 2014, Ruder posted a review of Jabri's services on Zillow. In her brief, Ruder explains (and appellees do not refute) that "Zillow is a publically available, interactive online real estate database which allows users to rate and review agents and other service-providers involved in real estate transactions." Ruder's review stated:

> Kathy [Jabri] has been a realtor since 1990, and sold 14 houses according to zillow. I listed my home with her to give her a break. As the result She kept my home for over 100 days, Temp. OFf Market against my wish. I have been told by over a dozen Realtors NO ONE will do that for any reason, because they value

their reputation, I was asked if it is incompetence, unstable mind , or rage induced by regection.  My answer is I do not know.  What I know is I would Never recommend her to anyone.  This is to inform you my experience, not to discourage anyone.[1]

Appellees sued Ruder for breach of contract and defamation.  Jabri also filed an application for injunction, under section 65.011 of the Texas Civil Practices and Remedies Code, "seeking an order requiring the removal and deletion of defamatory statements made by [Ruder] against [Jabri], including the false and defamatory statements [Ruder] posted on www.zillow.com."  Ruder filed a motion to dismiss appellees' defamation claims and Jabri's request for injunctive relief pursuant to the TCPA.  After a hearing, the trial court denied the motion to dismiss.  This appeal followed.

## II.  MOTION TO DISMISS

### A.  Standard of Review

We review de novo a trial court's ruling on a motion to dismiss filed under the TCPA. *Cruz v. Van Sickle*, 452 S.W.3d 503, 513 (Tex. App.—Dallas 2014, pet. filed).

### B.  Applicable Law

The TCPA "protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern" by providing "a special procedure for the dismissal of such suits."  *In re Lipsky*, No. 13-0928, 2015 WL 1870073, at *3 (Tex. Apr. 24, 2015) (orig. proceeding).  Section 27.003(a) allows a defendant to file a motion to dismiss a "legal action" that "appears to stifle the defendant's communication on a matter of public concern."  *Id.* at *1 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 27.003(a)).  "'Legal action' means a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief."  TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(6);

---

[1] The quoted language is identical to the original post as it appeared on Zillow, including typographical errors.

*see also Better Bus. Bureau of Metro. Dallas, Inc. v. Ward*, 401 S.W.3d 440, 443 (Tex. App.—Dallas 2013, pet. denied) ("The definition of 'legal action' in the statute is broad and evidences a legislative intent to treat any claim by any party on an individual and separate basis.").

The TCPA provides a two-step process for determining whether a legal action should be dismissed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b)–(c); *In re Lipsky*, 2015 WL 1870073, at *3. In the first step, the burden is on the movant to show "by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant meets this burden, "the second step shifts the burden to the plaintiff to 'establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question.'" *In re Lipsky*, 2015 WL 1870073, at *3 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c)). In determining whether the nonmovant's claim should be dismissed, the court is to consider the pleadings and any supporting and opposing affidavits. TEX. CIV. PRAC. & REM. CODE ANN. § 27.006(a).

The TCPA does not define "clear and specific evidence," but the Texas Supreme Court recently interpreted this phrase and gave the words "clear" and "specific" their plain or common meaning. *See In re Lipsky*, 2015 WL 1870073, at *6. "Clear" means "'unambiguous,' 'sure,' or 'free from doubt,'" and "specific" means "'explicit' or 'relating to a particular named thing.'" *Id.* (citing *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 689 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). A "prima facie case" is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)).

To maintain a defamation action, a plaintiff must prove: (1) the defendant published a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) while

acting with either actual malice, if the plaintiff is considered a public official or public figure, or negligence, if he is a private individual, regarding the truth of the statement, and (4) damages. *Id.* at \*9; *Avila v. Larrea*, 394 S.W.3d 646, 657 (Tex. App.—Dallas 2012, pet. denied). "[T]o be actionable, a statement must assert an objectively verifiable fact rather than an opinion." *Am. Heritage Capital, LP v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.). "We classify a statement as fact or opinion based on the statement's verifiability and the entire context in which the statement was made." *Id.* Whether a statement is a statement of fact or opinion is a question of law. *Id.*

"[T]ruth, even substantial truth, is a complete defense to defamation." *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.); *see also KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 692 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("[D]iscrepancies as to details do not demonstrate material falsity for defamation purposes."). "The test used in deciding whether a statement is substantially true involves considering whether the alleged defamatory statement was more damaging to the plaintiff's reputation, in the mind of the average listener, than a truthful statement would have been. This evaluation involves looking to the 'gist' of the statement." *Austin*, 118 S.W.3d at 496 (citing *McIlvain v. Jacobs*, 794 S.W.2d 14, 16 (Tex. 1990)); *see also Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (noting "the substantial truth doctrine precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details"); *Langston v. Eagle Printing Co.*, 797 S.W.2d 66, 69 (Tex. App.—Waco 1990, no writ) (stating a publication is substantially true even if it "greatly exaggerate[s]" plaintiff's misconduct, as long as "an ordinary reader would not attach any more opprobrium to the plaintiff's conduct merely because of the exaggeration").

"[T]o obtain a permanent injunction an applicant must demonstrate (1) a wrongful act, (2) imminent harm, (3) irreparable injury, and (4) no adequate remedy at law." *Henning v. OneWest*

*Bank FSB*, 405 S.W.3d 950, 970 (Tex. App.—Dallas 2013, no pet.). A request for injunctive relief is ancillary when a review of the pleadings and the relief sought shows that the "principal or primary relief sought" is something other than injunctive relief. *Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 432–33 (Tex. App.—Austin 2004, pet. denied) (reviewing pleadings to determine whether relief sought was "purely or primarily injunctive" for purposes of injunction venue statute, section 65.023 of the Civil Practices and Remedies Code); *see also In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 736–37 (Tex. 1998) (same); *Brown v. Gulf Television Co.*, 306 S.W.2d 706, 708–09 (1957) (same, discussing predecessor statute to section 65.023).

### C. Application of the Law to the Facts

In issues one and two, Ruder contends the trial court erred in denying her motion to dismiss appellees' defamation claims because (1) appellees' defamation claims are based on, related to, or in response to Ruder's exercise of the right of free speech and (2) appellees did not prove "by clear and specific evidence a prima facie case for each essential element" of defamation. In issue three, Ruder contends the trial court erred in denying her motion to dismiss Jabri's request for injunctive relief.

### 1. Defamation Claims

Ruder's Zillow post is the basis of appellees' defamation action. Appellees concede that Ruder's Zillow post falls within TCPA's definition of the "exercise of the right of free speech." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). Therefore, we conclude Ruder met her burden to show by a preponderance of the evidence that appellees' defamation claims are based on, related to, or in response to her exercise of the right of free speech. *See id.* § 27.005(b)(1); *Avila*, 394 S.W.3d at 655.

We next determine whether appellees established "by clear and specific evidence a prima facie case for each essential element" of their defamation claims. *See id.* § 27.005(b). Ruder

–6–

contends that none of her statements in the Zillow post constitute actionable, objectively verifiable statements of fact. Alternatively, Ruder argues that any factual statements were substantially true. Appellees contend Ruder published three verifiable false statements of fact: (1) "that Kathy Jabri listed [Ruder's] home 'Temp Off Market' for over 100 days without reason and against the wishes of [Ruder]"; (2) "that over a dozen Realtors said that 'NO ONE will do that for any reason, because they value their reputation'"; and (3) "that the Realtors questioned Kathy Jabri's competence, mental stability, and whether she suffered 'rage induced by regection [sic].'" We address each of these statements in turn.

As to the first statement, appellees assert that Ruder consented to listing the house as "temporarily off market" and that it was listed as such for sixty-four days, not "over 100." The record shows and the parties agree that Ruder's home was actually listed as "temporarily off market" for sixty-four days, from March 27, 2014, until May 30, 2014. However, "discrepancies as to details do not demonstrate material falsity for defamation purposes." *See Robinson*, 409 S.W.3d at 692. The "gist" of the statement is that Ruder was dissatisfied with Jabri's services because her property was listed as "temporarily off market" for an extended period of time without her consent. *See Austin*, 118 S.W.3d at 496. We cannot conclude that a statement identifying the time period as "over 100 days" was, in the mind of an average reader, more damaging to Jabri's reputation than an accurate statement identifying the time period as "sixty-four days" would have been. *See id.*; *see also Rogers v. Dallas Morning News, Inc.*, 889 S.W.2d 467, 471–73 (Tex. App.—Dallas 1994, writ denied) (concluding publication concerning misuse of charity funds was substantially true, despite misstatement that charity spent 10% of its donations on actual services, rather than 43%); *Finklea v. Jacksonville Daily Progress*, 742 S.W.2d 512, 514–15 (Tex. App.—Tyler 1987, writ dism'd w.o.j.) (concluding publication misstating that plaintiff had four drug related convictions, rather than two, was substantially

true); *Downer v. Amalgamated Meatcutters & Butcher Workmen of N. Am.*, 550 S.W.2d 744, 747 (Tex. Civ. App.—Dallas 1977, writ ref'd n.r.e.) (concluding misstatement that plaintiff embezzled $2,187.77, rather than $840.73, was substantially true).

To establish that the statement "against [Ruder's] wish" was false, appellees offered the affidavits of Jabri and Jordan. In his affidavit, Jordan states, in relevant part,

> On March 26, 2014, I received a telephone call from an attorney claiming to represent [Ruder]. Based on our conversation, I understood that [Ruder] wanted the listing [for her house] marked as 'active' in the MLS listing. I instructed Kathy Jabri to change the listing. On or about March 27, 2014, [Ruder] complained to me that she had received requests for showings of her property, and that she did not want her property shown.

In her affidavit Jabri states, in relevant part,

> The listing for [Ruder's] property remained contract "pending" until March 26, 2014. About that time, William Jordan instructed me to change the listing to "active." I complied with his instructions on March 27, 2014, but consulted with a real estate attorney regarding the situation. Thereafter, I listed [Ruder's] property as "temporarily off market."

According to Jabri, the last instruction she received concerning Ruder's house was to list the property as "active." Jordan's affidavit establishes that on March 26, 2014, Ruder wanted her home listed as "active." Although, according to Jordan, on March 27, 2014, Ruder complained that she "did not want her property shown," nothing in the record shows that this is the equivalent of requesting the property be listed as "temporarily off market." We also note that the record does not show that Ruder's complaint was communicated to Jabri. Rather, the record reflects that Jabri independently decided to change the MLS listing of Ruder's house from "active" to "temporarily off market." Assuming without deciding that the first statement asserted an objectively verifiable fact, we conclude on this record, appellees failed to establish a prima facie case that the statement was false. *See Newspaper Holdings, Inc. v. Crazy Hotel Assisted Living, Ltd.*, 416 S.W.3d 71, 84 (Tex. App.—Houston [1st] Dist. 2013, pet. denied) (concluding plaintiff did not make prima facie case of defamation when no evidence countered showing that

statement was substantially true); *Avila*, 394 S.W.3d at 662 (concluding trial court erred in denying section 27.003 motion to dismiss defamation claim because there was no evidence the publication was false).

As to the second statement, in the trial court, in their response to Ruder's motion to dismiss, appellees acknowledged that they could not produce evidence that this statement was false: Ruder was "told by over a dozen Realtors NO ONE will do this for any reason because they value their reputation." Assuming without deciding that this statement asserted an objectively verifiable fact, we conclude appellees failed to establish a prima facie case that the statement was false. *See Avila*, 394 S.W.3d at 662.

Finally, regarding the third statement, appellees argue that Ruder "proposed" or "insinuated" that Jabri is incompetent, mentally unstable, or raging from rejection. However, a statement implicitly or expressly calling someone incompetent is a nonactionable statement of opinion. *See Am. Heritage Capital, LP*, 436 S.W.3d at 876 (holding that "a statement expressly calling someone incompetent is a nonactionable statement of opinion"); *Robertson*, 190 S.W.3d at 903 (concluding "a statement implying a coworker is incompetent is not a statement of fact, but rather a nonactionable opinion" and "is not objectively verifiable"). Similarly, in the context of Ruder's Zillow post, the references to Jabri having an "unstable mind, or rage induced by regection [sic]" are nonactionable statements of opinion. *See Shaw v. Palmer*, 197 S.W.3d 854, 857–58 (Tex. App.—Dallas 2006, pet. denied) (concluding that in its common usage, the term "crazy" is "a loose and figurative term employed as a metaphor or hyperbole" that does not "convey a verifiable fact," and "[a]s such, it is an expression of opinion absolutely protected by the First Amendment"); *see also Lieberman v. Fieger*, 338 F.3d 1076, 1081 (9th Cir. 2003) (concluding attorney's comments that psychiatrist was "Looney Tunes," "crazy," "nuts," and "unbalanced" were protected under First Amendment as statements of opinion); *Grillo v. Smith*,

193 Cal. Rptr. 414, 417 (Cal. Ct. App. 1983) ("The words 'angry,' 'shouted,' 'stormed,' and 'kangaroo court' fall clearly on the opinion side of the line. They are subjective words and phrases of the sort which have been found to be opinion as a matter of law frequently in the past."). Accordingly, we conclude the appellees failed to establish that the third statement asserts an objectively verifiable fact, rather than a nonactionable statement of opinion.

On this record, appellees failed to establish by clear and specific evidence a prima facie case that Ruder published a false statement of fact, an essential element of their defamation claims. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *In re Lipsky*, 2015 WL 1870073, at \*9; *Avila*, 394 S.W.3d at 657. Accordingly, the trial court erred in denying Ruder's motion to dismiss appellees' defamation claims. We decide Ruder's first and second issues in her favor.

### 2. Request for Injunctive Relief

In issue three, Ruder contends the trial court erred in denying her motion to dismiss appellee Jabri's request for injunctive relief. In her second amended application for injunction, Jabri requested "an order requiring the removal and deletion of defamatory statements made by [Ruder] against [Jabri], including the false and defamatory statements [Ruder] posted on www.zillow.com." After reviewing the record, we find no claim by Jabri that any statements were defamatory other than Ruder's Zillow post. Accordingly, we need not address this issue because we have already decided the trial court erred in denying Ruder's motion to dismiss appellees' defamation claims, and the injunctive relief pled for by Jabri is ancillary to the defamation claims. *See* TEX. R. APP. P. 47.1; *Howell*, 143 S.W.3d at 433 (concluding injunctive relief was ancillary because it "[sought] to protect and enforce the rights established by the [primary] relief" sought by claimant).

### III. CONCLUSION

The trial court erred in denying Ruder's motion to dismiss filed pursuant to the TCPA. We reverse the trial court's order denying Ruder's motion to dismiss and render judgment dismissing appellees' defamation claims. We remand the cause to the trial court for further proceedings, including a determination of costs, attorney's fees, and other expenses as authorized under section 27.009. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.009.

/Douglas S. Lang/

DOUGLAS S. LANG
JUSTICE

141265F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

AZEB RUDER, Appellant

No. 05-14-01265-CV          V.

WILLIAM JORDAN D/B/A WILLIAM
DAVIS REALTY, WILLIAM DAVIS
REAL ESTATE SERVICES, LLC D/B/A
WILLIAM DAVIS REALTY, AND
KATHY JABRI, Appellees

On Appeal from the County Court at Law
No. 4, Collin County, Texas
Trial Court Cause No. 004-01346-2014.
Opinion delivered by Justice Lang. Justices
Bridges and Evans participating.

    In accordance with this Court's opinion of this date, the trial court's order denying appellant Azeb Ruder's motion to dismiss is **REVERSED** and judgment is **RENDERED** that appellees' defamation claims are dismissed.  We **REMAND** the cause to the trial court for further proceedings, including a determination of costs, attorney's fees, and other expenses authorized by section 27.009 of the Texas Civil Practices and Remedies Code.

    It is **ORDERED** that appellant AZEB RUDER recover her costs of this appeal from appellee WILLIAM JORDAN D/B/A WILLIAM DAVIS REALTY, WILLIAM DAVIS REAL ESTATE SERVICES, LLC D/B/A WILLIAM DAVIS REALTY, AND KATHY JABRI.

Judgment entered this 20th day of July, 2015.