**Affirmed in Part, Reversed and Rendered in Part, Remanded, and Memorandum Opinion filed July 7, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00158-CV

---

**ELIZABETH WILLIAMS, Appellant**

**V.**

**WILLIAM P. RAMEY, Appellee**

---

**On Appeal from the 157th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2020-51549**

---

## M E M O R A N D U M   O P I N I O N

A paralegal at a law firm sued the law firm and its managing partner for sexual assault, intentional infliction of emotional distress, invasion of privacy, and negligence. The managing partner counterclaimed for civil and criminal malicious prosecution, defamation, and business disparagement. The paralegal filed a motion to dismiss the partner's counterclaims pursuant to the Texas Citizen's Participation Act. The trial court granted the paralegal's TCPA motion in part and dismissed the

partner's malicious prosecution claims without prejudice but denied the dismissal motion as to the partner's defamation and business disparagement claims. The paralegal filed this accelerated, interlocutory appeal, contending that the trial court erred by (1) dismissing the malicious prosecution claims without prejudice and (2) refusing to dismiss the partner's defamation and business disparagement claims because he failed to provide clear and specific evidence of a prima facie case for these claims.

We hold that the trial court did not err by dismissing the partner's malicious prosecution claims without prejudice and affirm that part of the trial court's order. We also hold that the trial court did not err by denying the paralegal's TCPA motion to dismiss regarding the partner's defamation counterclaim. However, because the partner failed to provide clear and specific evidence of a prima facie case for business disparagement, we hold that the trial court erred by denying the TCPA motion as to this claim and render judgment dismissing this claim. Accordingly, we affirm in part, reverse and render in part, and remand for further proceedings.

## Background

Elizabeth Williams is a former employee of Ramey & Schwaller, LLP ("R&S"). She reported to and worked directly for William Ramey, the firm's managing partner. The parties agree that, on September 28, 2018, Williams and Ramey took a long lunch at which alcohol was consumed. They also agree that they returned to the office and continued drinking alcohol into the evening hours, while also performing various work tasks. They agree that Williams and Ramey shared traumatic stories from their childhoods. They also agree that sometime that evening, Williams suffered an injury to her face. But their stories diverge regarding how that injury occurred: Williams asserts that Ramey plied her with alcohol and attempted

2

to sexually assault her, causing her injuries; Ramey contends that Williams fell while drunk, which caused the injury to her face.

Ramey sent numerous text messages in the days following Williams's injury in which he stated he could not remember what had happened and expressed remorse. Williams did not indicate in any of her responses to Ramey's text messages that she believed that he had caused her injury, although she largely confined her responses to work-related matters.

On October 4, Williams's counsel, Kell A. Simon, informed Ramey in writing that Williams had retained him to represent her "in claims against you and your law firm related to your conduct at work on September 28, 2018." This letter further stated:

> As you are aware, Ms. Williams has had to seek medical treatment for physical and psychological injuries you inflicted upon her during your attempt to force her to engage in sex with you at your office on September 28. Those injuries are severe, and she is likely to require treatment and counseling for them during the foreseeable future.
>
> The evidence I have reviewed, including Ms. Williams' recounting of the events of that evening, text messages, and photographs of Ms. Williams' physical injuries, leave me without doubt that your conduct violated the State of Texas' prohibitions against sexual assault, battery, assault, and the intentional infliction of emotional distress.
>
> Ms. Williams has instructed me to file suit against both you individually and the law firm within the next 60 days. She has, however, also authorized me to represent that she is willing to consider resolving these matters amicably before we file suit.
>
> I understand that you are going to be out of the country for the next several weeks. Ms. Williams intends to take her remaining PTO beginning this week, and then to remain on paid administrative leave from her position with the firm until we have determined whether this matter can be resolved.

Thereafter, on October 9, Williams reported the incident to law enforcement, although the investigative outcome is not in our record. Williams subsequently quit working at R&S.

Nearly two years later, on August 26, 2020, Williams sued Ramey for assault, sexual assault, battery, intentional infliction of emotion distress, and invasion of privacy. She also sued R&S for negligence. On October 5, Ramey generally denied Williams's allegations, pleaded several affirmative defenses, and counterclaimed for defamation, business disparagement, and malicious prosecution. R&S answered with a general denial and asserted several affirmative defenses on October 19.

On October 22, Williams filed a TCPA motion to dismiss Ramey's counterclaims. In her motion, she sought dismissal of Ramey's counterclaims under the TCPA's protection of the right of free speech and the right to petition. *See* Tex. Civ. Prac. & Rem. Code § 27.003(a). She contended that, by filing his counterclaims, Ramey sought to "shut down" Williams's "free speech and right to petition." She noted that the court must dismiss Ramey's claims "unless Ramey produces 'clear and specific evidence' establishing a prima facie case for each element of his . . . suit." If the trial court granted her motion, Williams sought attorney's fees, court costs, and other expenses incurred in defending against Ramey's allegations, as well as the award of sanctions.

On November 2, Ramey filed a motion to engage in limited discovery and delay the hearing on Williams's TCPA motion until the discovery was completed. The trial court signed an order on November 5 granting Ramey's request to subpoena certain evidence and delaying the hearing on the TCPA motion. On November 18, R&S counterclaimed against Williams for business disparagement. Williams did not amend her TCPA motion or file a separate TCPA motion seeking to dismiss this counterclaim.

4

Ramey responded to Williams's TCPA motion to dismiss. In it, he provided his own narrative of events of the night of September 28, 2018. He denied attempting to sexually assault Williams, instead claiming that Williams "drank too much and fell." He suggested that Williams was motivated to lie about the alleged attempted assault for monetary gain, and he claimed that Williams should not be believed. He contended that Williams had "no evidence" of her "false and salacious claims." Ramey claimed that his evidence established a prima facie showing entitling him to the relief he requested. He attached his own lengthy sworn declaration, as well as other evidence, such as copies of text messages, polygraph reports, several sworn declarations provided by other individuals, copies of letters from law firm clients removing their business, and copies—filed under seal—of police records and Williams's medical records pertaining to the alleged sexual assault.

After hearing the arguments and considering the evidence provided by Ramey, the trial court granted Williams's TCPA motion only as it related to Ramey's claims for malicious prosecution, "as those claims are not yet ripe." The motion was granted "without prejudice to the refiling of the [malicious prosecution] claims once they are ripe." The court denied the remainder of Williams's motion.

Williams timely filed this accelerated interlocutory appeal. *See* Tex. Civ. Prac. & Rem. Code §§ 27.005, 27.008, 51.014(a)(12).

**Analysis**

Williams presents two issues for our review. First, she contends the trial court erred by dismissing Ramey's malicious prosecution claims without prejudice instead of with prejudice. Second, she asserts that the trial court erred in denying her TCPA motion to dismiss as to the other counterclaims because Ramey failed to establish by clear and specific evidence a prima facie case for each element of his defamation

5

and business disparagement claims.  We begin our analysis with a brief overview of the TCPA and the competing burdens it establishes.

## A.    Applicable Law and Standard of Review

The TCPA contemplates an expedited dismissal procedure applicable to claims brought to intimidate or silence a defendant's exercise of the rights enumerated in the Act.  *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019); *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).  The party invoking the TCPA may file a motion to dismiss the "legal action" and must show by a preponderance of the evidence that the action is "based on or is in response to" that party's exercise of the right of free speech, right to petition, or right of association.  Tex. Civ. Prac. & Rem. Code §§ 27.003(a); 27.005(b); *see also Coleman*, 512 S.W.3d at 898.  If the movant satisfies this burden, the trial court must dismiss the lawsuit unless the nonmovant "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."  Tex. Civ. Prac. & Rem. Code § 27.005(c); *see also Coleman*, 512 S.W.3d at 899.  A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted.  *See In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015).  It is the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *Id.* (internal quotations omitted).

We construe the TCPA liberally to effectuate its purpose and intent fully.  *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018); *Coleman*, 512 S.W.3d at 899; *Enter. Crude GP LLC v. Sealy Partners, LLC*, 614 S.W.3d 283, 293 (Tex. App.—Houston [14th Dist.] 2020, no pet.); Tex. Civ. Prac. & Rem. Code § 27.011(b).  A court's determination of whether claims fall within the TCPA's framework is subject to a de novo standard of review.  *See Adams*, 547

S.W.3d at 894. Under that standard, we "make an independent determination and apply the same standard used by the trial court in the first instance." *Cox Media Grp., LLC v. Joselevitz*, 524 S.W.3d 850, 859 (Tex. App.—Houston [14th Dist.] 2017, no pet.). We must consider the relevant pleadings and any supporting or opposing affidavits "stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code § 27.006(a). We review these materials in the light most favorable to the nonmovant. *Enter. Crude*, 614 S.W.3d at 294.

**B.     Ramey's Counterclaims**

1.     *Malicious Prosecution*

In her first issue, Williams contends the trial court erred in dismissing Ramey's malicious prosecution counterclaims without prejudice. We disagree.

Both criminal and civil malicious prosecution claims share a common element: termination of proceedings against the plaintiff in the plaintiff's favor. *See, e.g.*, *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 793 n.3 (Tex. 2006) (malicious criminal prosecution); *Guardian Transfer & Storage, Inc. v. Behrndt*, No. 14-14-00635-CV, 2016 WL 1267911, at *7 (Tex. App.—Houston [14th Dist.] Mar. 31, 2016, no pet.) (mem. op.) (malicious civil prosecution). At the hearing on Williams's TCPA motion to dismiss, Ramey acknowledged that he could not meet this element because, at the time of the hearing on Williams's TCPA motion, the criminal case against him was pending, as was the instant civil case upon which he based his malicious civil prosecution claim. The trial court dismissed these claims without prejudice, stating in its dismissal order, "The Court grants the motion as to

the claims of malicious prosecution, as those claims are not yet ripe. This motion is granted without prejudice to the refiling of the claims once they are ripe."[1]

The TCPA does not expressly require dismissal of a claim with prejudice. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). In fact, this court has on at least one occasion affirmed a dismissal without prejudice under the TCPA. *See Buzbee v. Clear Channel Outdoor, LLC*, 616 S.W.3d 14, 20, 31 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) (affirming trial court's dismissal without prejudice of some claims).

Moreover, an unripe claim deprives the court of jurisdiction to rule on the merits of that claim. Thus, any dismissal of a claim on ripeness grounds is inappropriate for dismissal with prejudice. *See Lyle v. Midway Solar, LLC*, 618 S.W.3d 857, 875 (Tex. App.—El Paso 2020, pet. denied) (reforming judgment to dismiss unripe claims without prejudice to refiling).

Because nothing in the language of the TCPA requires dismissal with prejudice, and because a jurisdictional dismissal for unripeness is not prejudicial to refiling once the claim becomes ripe, the trial court did not err in dismissing Ramey's malicious prosecution claims without prejudice. We overrule Williams's first issue.

---

[1] Ripeness is a requirement of justiciability. *Perry v. Del Rio*, 66 S.W.3d 239, 249 (Tex. 2001); *Patterson v. Planned Parenthood of Houston & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998). The ripeness doctrine conserves judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *TCI W. End, Inc. v. City of Dallas*, 274 S.W.3d 913, 918 (Tex. App.—Dallas 2008, no pet.). The doctrine prohibits suits involving "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Patterson*, 971 S.W.2d at 442. A case is not ripe if its resolution depends on contingent facts or upon events that have yet to come to pass. *See id.* at 443.

## 2. *Defamation*

In part one of her second issue, Williams contends that Ramey did not establish each element of his defamation claim by clear and specific evidence, and thus, the trial court erred by denying her TCPA motion. "Defamation's elements include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages, in some cases." *Lipsky*, 460 S.W.3d at 593. The status of the person allegedly defamed determines the requisite degree of fault: a private individual, such as Ramey, need only prove negligence. *Id.* Finally, the plaintiff must plead and prove damages, unless the defamatory statements are defamatory per se. *Id.*

### a. Publication

"'Publication' occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is 'capable of understanding their defamatory import and in such a way that the third person did so understand.'" *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017) (quoting *Austin v. Inet Techs., Inc.*, 118 S.W.3d 491, 496 (Tex. App.—Dallas 2003, no pet.)). To resist a TCPA motion to dismiss on the publication element, the plaintiff must establish "the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff." *Lipsky*, 460 S.W.3d at 591. Ramey claims he met his burden for this element because Williams "published" the false statement that he attempted to sexually assault her to: (1) the Texas Lawyer, an online legal news publication; (2) some of the Ramey's friends; (3) some of the firm's clients; (3) the Houston Police Department;[2] and (4) Williams's friends, specifically Diana Taylor and Karla Baker.

---

[2] Williams's statements made to law enforcement concerning potential criminal proceedings against Ramey are conditionally privileged; they cannot serve as the basis of a civil

9

The Texas Lawyer publication is not part of our record, so we cannot evaluate either what was said or the defamatory nature of the statements. But even if it were, Ramey did not provide any evidence showing that Williams was the source for any statements made in the article.[3] There is likewise no evidence that Williams made any statements regarding the alleged assault to any of the firm's clients. And Williams's statements made during this proceeding are absolutely privileged; these statements simply cannot form the basis of a defamation claim as a matter of law. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015); *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987) ("[A]n absolute privilege confers immunity regardless of motive.").

Regarding any statements made to Williams's "friend"[4] Karla Baker, Baker stated only that "Ms. Williams allegations against Mr. Ramey became the talk of the office not only by employees but the attorneys as well." Nowhere in Baker's sworn declaration does she define what these "allegations" are or state that Williams made any statements to her—or to anyone else—accusing Ramey of attempted sexual assault.

---

action unless Ramey shows that the statements were both false and malicious. *See Espinosa v. Aaron's Rents, Inc.*, 484 S.W.3d 533, 542-43 (Tex. App.—Houston [1st Dist.] 2016, no pet.); *see also Brann v. Guimaraes*, No. 01-19-00439-CV, 2021 WL 2690869, at *10 (Tex. App.—Houston [1st Dist.] July 1, 2021, pet. denied) (mem. op.). Accordingly, Williams's statements to law enforcement are part and parcel of Ramey's malicious prosecution claim that the trial court has dismissed at this juncture of proceedings.

[3] Ramey states on appeal, "On information and belief, Williams was the source for the article." An allegation based on "information and belief" is nether clear nor specific enough to establish an element of a prima facie case. *E.g.*, *W. Mktg., Inc. v. AEG Petroleum, LLC*, 616 S.W.3d 903, 917-18 (Tex. App.—Amarillo 2021, pet. denied) (citing *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 608-09 (Tex. App.—San Antonio 2018, pet. denied); *Whisenhunt v. Lippincott*, 474 S.W.3d 30, 46 n.17 (Tex. App.—Texarkana 2015, pet. denied)).

[4] Ramey's assertion that Baker and Williams are friends is belied by Baker's sworn declaration, in which she states, "I did not know Elizabeth Williams personally, I am not familiar with who she is and what she looks like."

That brings us to the statements Williams made to Diane Taylor. In Taylor's sworn declaration, she states:

> On or about October 1, 2018, [Williams] called me. She told me that she had gotten drunk at the office with [Ramey] and had suffered some injuries to her face, shoulders and arms. *She said she did not remember how she received the injuries, but she thought [Ramey] had attempted to sexually assault her.*
>
> [Williams] told me that she and [Ramey] had gone out to dinner, went back to the office and kept drinking. *[Williams] said [Ramey] tried to get [Williams] to put her head between his legs, but she said no.* [Williams] said she woke up in the night in the lady's restroom. She did not know how she got there or how she sustained her injuries.

(Emphasis added). We conclude that this statement sufficiently establishes the facts of when, where, and what was said to show that Williams "published" a statement to Taylor that Ramey attempted to sexually assault Williams. *See Lipsky*, 460 S.W.3d at 591.

### b. Falsity

Ramey was additionally obliged to provide clear and specific evidence that Williams's statements were false. *D Magazine Partners, LP v. Rosenthal*, 529 S.W.3d 429, 441 (Tex. 2017). Ramey challenged the veracity of Williams's statements in his sworn declaration attached to his response to Williams's TCPA motion. Additionally, Ramey attached a polygraph report indicating that he showed no signs of deception when he denied attempting to sexually assault Williams. Because, at its core, this is a case of she said/he said, in which one party claims events have occurred and the other denies the allegations, Ramey's affidavit and attached evidence denying Williams's allegations satisfies his burden with respect to the falsity element at this preliminary stage. *See Rodriguez v. Gonzales*, 455 S.W.3d 844, 854, 856 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (plaintiff's affidavit denying co-defendant's allegations suffices as evidence of

11

falsity in context of TCPA motion to dismiss); *Van der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (same); *accord Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at \*10-11 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.) (mem. op.) (same and noting the difficulties present in analyzing the sufficiency of prima facie proof in a "she said/she said" TCPA motion to dismiss).

### c. Damages

Defamation per se includes statements that are so obviously harmful that general damages may be presumed. *Lipsky*, 460 S.W.3d at 593. "Accusing someone of a crime, of having a foul or loathsome disease, or of engaging in serious sexual misconduct are examples of defamation per se." *Id.* at 596.

Because Williams has accused Ramey of a crime—attempted sexual assault— her statements, if false, amount to defamation per se. *See id.* Thus, Ramey did not have to prove damages to defeat Williams's TCPA motion. *See id.*

\*        \*        \*

In sum, at this preliminary stage of proceedings, Ramey provided "the minimum quantum of evidence necessary" to survive a TCPA dismissal of his defamation claim.[5] *See Lipsky*, 460 S.W.3d at 591 ("[P]leadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of

---

[5] We pause to comment briefly on the contents of Ramey's lengthy sworn declaration. Much of what is contained in the declaration amounts to conclusory opinions. "Bare, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Lipsky*, 460 S.W.3d at 592-93. Also, conclusory evidence contained in self-serving affidavits does not suffice to provide the clear and specific evidence required under the TCPA. *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 715-16 (Tex. 2016). We do not base our decision on any of Ramey's conclusory assertions, and, looking only to the factual statements contained in his declaration, we have concluded that Ramey provided sufficient clear and specific evidence to survive Williams's TCPA motion as to his defamation claim.

12

the statements, and how they damaged the plaintiff[6] should be sufficient to resist a TCPA motion to dismiss.").  The trial court did not err in denying Williams's TCPA motion to dismiss as to Ramey's defamation claim.

We overrule this portion of Williams's first issue.

### 3.    *Business Disparagement*

In the second part of her second issue, Williams contends that Ramey failed to produce clear and specific evidence of each element of his business disparagement claim.  "To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex. 2003); *Choctaw Constr. Servs. LLC v. Rail-Life R.R. Servs. LLC*, 617 S.W.3d 143, 152 (Tex. App.—Houston [1st Dist.] 2020, no pet.).

Presuming without deciding that Ramey has alleged a viable business disparagement claim,[7] to survive Williams's TCPA motion to dismiss, Ramey was required to provide clear and specific evidence of, among other elements of a business disparagement claim, special damages.  *E.g.*, *Lipsky*, 460 S.W.3d at 592;

---

[6] As explained above, because Williams's statements, if false, amount to defamation per se, Ramey was not required to provide evidence of special damages.  *See Lipsky*, 460 S.W.3d at 596.

[7] Although business disparagement and defamation are similar claims, the torts serve different interests.  *Lipsky*, 460 S.W.3d at 591.  Business disparagement "'applies to derogatory publications about the plaintiff's economic or commercial interests.'"  *Id.* (quoting 3 Dan D. Dobbs, Paul T. Hayden, & Ellen M. Bublick, The Law of Torts § 656, at 615 (2d ed. 2011)).  This tort "does not seek to redress dignitary harms to the business owner, but rather redresses aspersions cast on the business's commercial product or activity that diminishes those interests."  *Id.* "Impugning one's reputation is possible without disparaging its commercial interests and vice versa."  *Id.*  Williams's allegation of sexual assault is not an "aspersion[] cast on the business's commercial product or activity that diminishes that interest," nor is it an "injurious falsehood" about Ramey's "economic or commercial interests."  *Id.*

13

*see also Landry's Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40, 53 (Tex. 2021) (noting that business disparagement claim requires proof of special damages to plaintiff).

Ramey points to letters from several clients transferring their business from the firm. He contends that the transfer of these files was only made after publication of the Texas Lawyer article, which he alleged was based on Williams's false accusations. In his sworn declaration, he states:

> I suffered special damages, pecuniary loss, including loss of income, clients, including the loss of Texas A&M University, The University of Texas, and the University of Houston, reputation, legal community standing, my cost of defense, my cost of prosecuting this lawsuit, and my time.
>
> For Texas A&M University, I as an equity partner in R&S, received income from a contract with Texas A&M. After Williams made her false allegations and Texas A&M University learned of the allegations, the general counsel, Ray Bonita, cancelled R&S's contract and removed all billable files from R&S. Thus, I no longer receive any income from R&S's contract with Texas A&M University.
>
> For University of Texas, I as an equity partner in R&S, received income from work performed on files at the University of Texas at Arlington. After Williams made her false allegations and the University of Texas learned of the allegations, the associate general counsel, Omar Syed, cancelled R&S's contract and removed all files from R&S. Thus, I no longer receive any income from R&S's contract with the University of Texas.
>
> For the University of Houston, I as the equity partner in R&S, received income from R&S performing work on files from the University of Houston. After Williams made her false allegations and the University of Houston learned of simply the allegations, Robert Prosak removed all billable files from R&S. Thus, I no longer receive any income from R&S's files with the University of Houston.

Ramey attached letters from these universities transferring various matters from R&S to other law firms. None of these letters mentions Williams's allegations.

14

Nonetheless, Ramey contends that the temporal proximity between the termination of R&S's professional services and the article in the Texas Lawyer means they are "causally related."

This evidence is similar to evidence deemed insufficient to support damages in a business disparagement claim in *Landry's*. *See* 631 S.W.3d at 54-55. There, the supreme court held that Landry's evidence of cancellations by customers made "with vague references to the 'recent controversy' or 'recent publicity,'" coupled with the timing of an allegedly defamatory publication, were "insufficient to support a causal link between any particular statement of the defendants and the decisions made by the two organizations to do business elsewhere." *Id.* Thus, the court held that Landry's failed to make a prima facie showing of economic damages to support its business disparagement claim. Likewise, here, these universities could have transferred their business to another firm "for any number of reasons." *Id.* (quoting *Burgage v. Burbage*, 447 S.W.3d 249, 262 (Tex. 2014)).

Ramey further states, "Notably, Prosak indicated to me during a meeting in my office that R&S could have its contract with the University of Houston back when the charges were no longer pending against me." Prosak did not indicate to Ramey that it was *Williams's statements* that caused the university to terminate its contract with R&S. As in *Landry's*, we likewise conclude that, assuming Williams's statements regarding the alleged attempted sexual assault can support a business disparagement claim, Ramey failed to make a prima facie showing of economic damages to support such a claim.

Accordingly, we sustain this portion of Williams's first issue.

15

## Conclusion

We have determined that the trial court did not err in granting Williams's TCPA motion to dismiss without prejudice to the refiling of Ramey's malicious prosecution claims when they are ripe. We express no opinion on the merits of these claims. We have also determined that the trial court did not err in denying Williams's TCPA motion as to Ramey's defamation claim. However, the trial court erred in denying Williams's TCPA motion as to Ramey's business disparagement claim, and we reverse and render judgment dismissing that claim.

Accordingly, we affirm in part, reverse and render in part, and remand for further proceedings.


/s/    Kevin Jewell
        Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.

16